CASE 70.—PROSECUTION AGAINST THE INTERNATIONAL HARVESTER COMPANY OF AMERICA, FOR UNLAWFUL COMBINATION TO FIX PRICE OF MACHINES.—February 6.

# International Harvester Co. of America v. Commonwealth

Appeal from Trimble Circuit Court.

R. F. Peak, Circuit Judge.

Defendant convicted and appeals. Affirmed.

1. Indictments—Description of Offense—Sufficiency.—Where the words of a statute are descriptive of the offense, an indictment thereunder will be sufficient if it follow the language of the statute.

2. Error in Name—Correction on Record.—Under section 125, Criminal Code, providing that "an error in the name of the defendant shall not vitiate the indictment if the true name be discovered and an entry made on the record," an indictment returned against the "International Harvester Machine Co.," when its true name was the "International Harvester

International Harvester Co. of America v. Commonwealth.

Co., of America," which was corrected on the record by order of the trial court, the proceedings thereon were valid under the Code.

3. Pools and Trusts—Combination—Fixing Prices—Evidence—On the trial of an indictment for a violation of Ky. Stats., section 3915, prohibiting a combination having for its object the fixing, regulating or controlling the price of merchandise, manufactured articles or property of any kind sold in this State, and fixing a punishment therefor, where the evidence shows that a general agent had charge of five competing harvesting machine companies for certain counties in Kentnucky and Indiana, for which he was authorized to establish and did establish separate agents for the sale of each machine, at a fixed price, which was the same for each of them, at which price the local agents were each to account to the company for which he was selling, and neither was to sell outside of his territory on pain of forfeiture of his commission, Held—That this evidence was sufficient to authorize the jury to find the defendant guilty under the statutes.

4. Foreign Corporations—Jurisdiction—Beginning and Completion of Offense.—While the Legislature of this State has no extra-territorial power to punish crime, if a foreign corporation doing business in this State enters into or becomes a member of a pool or trust, beyond the limits of this State, to fix the price of property in this State, then the crime, put in motion in the foreign state, becomes complete in this State, when committed here in pursuance to the conspiracy formed in a foreign state; and this applies to corporations whether organized in or out of this State.

WILLIS & TODD, attorneys for appellant.

N. B. HAYS, Attorney General, and CHAS. H. MORRIS, for the Commonwealth.

(No briefs—record out of office.)

Opinion of the Court by Judge Nunn—Affirming.

The indictment in this case charged the appellant of having entered into combination for the purpose of fixing the price of manufactured articles prohibited by section 3915 of the Kentucky Statutes of 1903, which reads as follows, to-wit: "That if any corpora-

tion under the laws of Kentucky, or under the laws of any other State or country, for transacting or conducting any kind of business in this State, or any partnership, company, firm or individual, or other association of persons, shall create, establish, organize or enter into, or become a member of, or a party to, or in any way interested in any pool, trust, combine, agreement, confederation or understanding with any other corporation, partnership, individual or person, or association of persons, for the purpose of regulating or controlling or fixing the price of any merchandise, manufactured articles or property of any kind, or shall enter into, become a member of, or a party to or in any way interested in any pool, agreement, contract, understanding, combination or confederation, having for its object the fixing, or in any way limiting the amount or quantity or any article of property, commodity or merchandise to be produced or manufactured, mined, bought or sold, shall be deemed guilty of the crime of conspiracy, and punished therefor as provided in the subsequent sections of this act." The indictment follows the language of the statute, which describes the offense with sufficient certainty to enable the appellant to know the offense charged. Where the words of the statute are descriptive of the offense, the indictment will be sufficient if it follows the language of the statute. See Moore v. Commonwealth, 92 Ky. 630, 13 Ky. Law Rep. 738, 18 S. W. 833, Commonwealth v. Ward, 92 Ky. 158, 13 Ky. Law Rep. 422, 17 S. W. 283, and Commonwealth v. Grinstead & Tinsley, 55 S. W. 720, 21 Ky. Law Rep. 1444. The punishment for the violation of this statute is fixed by section 3917 of Kentucky Statutes at a sum not less than $500 and not more than $5,000. Upon the trial of the case the appellant was convicted and the punishment fixed

by the jury at $2,000. The appellant seeks a reversal and assigns the following errors: First, because the indictment, as returned, was not against the appellant in its corporate name; second, there was no evidence heard on the trial showing that appellant had committed any offense under the statute; third, that instruction No. 1 given for the commonwealth was erroneous and prejudicial to the appellant; four, that the court erred in refusing to give instructions A and B offered by it. We will consider the alleged errors in the order stated.

The indictment, as drawn and presented by the grand jury, charged the "International Harvester Machine Company" with the offense therein set out, when the true name of the appellant was "International Harvester Company of America." Section 125 of the Criminal Code of Practice provides as follows, viz.: "An error as to the name of the defendant shall not vitiate the indictment, nor proceedings thereon, and if his true name be discovered at any time before execution, an entry shall be made on the record of the court of his true name, referring to the fact of his being indicted by the name mentioned in the indictment, and the subsequent proceedings shall be in the true name." This was corrected by order of the court as provided in this section. While the order of the court was not artfully drawn, it substantially met the requirements of the Code. See Commonwealth v. Kelcher, 3 Metc., 485; Robinson v. Commonwealth, 88 Ky. 386, 11 S. W. 210, 10 Ky. Law Rep. 972, and Commonwealth v. Jenkins, 115 Ky. 62, 72 S. W. 363, 24 Ky. Law Rep. 1881. Appellant's counsel contends that this section of the Code is not applicable to corporations; that there is a very great difference between the individual and the corporation; the name does not constitute the individual, while the name is

the life and existence of the corporation; that it is immaterial by what name a person is indicted, prose-cuted, and punished because it is the individual that is punished; that, when corporations are created, a name must be given to it, and by that name only must it sue and be sued and do all legal acts. The law knows the corporation only by its corporate name. This reasoning may be technically correct; and the General Assembly, comprehending that fact, enacted section 457 of the Kentucky Statutes of 1903 and section 732 of the Civil Code of Practice, which provides that the word "person" may include a corporation.

The second assignment of error presented by appellant requires a brief discussion of the evidence produced upon the trial. There were only three witnesses who testified, to-wit, N. E. Furlong, appellant's general agent or manager for a district composed of 45 counties in Kentucky and 11 in Indiana, and two or three sales agents in Trimble county, Kentucky. Furlong testified that he was in full charge of appellant's agency in Louisville, Ky., which covered the territory above mentioned; that he had been in charge since the agency was established about the year 1902; that shortly before he took charge of the agency that he was a traveling agent in this State for the McCormick Harvester Company and had been such for about nine years; that during that time the following companies or corporations had established agencies in this State and sold harvesting machinery in competition with each other and the McCormick machine, to-wit.: The Champion by Warner, Bushnell & Co., Springfield, Ohio; Deering machine of the Deering Harvester Company, Chicago, Ill.; the Plano machine by the Plano Manufacturer, Plano, Ill.; the Milwaukee machine by the Milwaukee Harvester Machine Company, Milwaukee, Wis., and the Osborn machine, the resi-

dence of the last-named machine not being stated.
The witness stated that there was sharp competition
between the agents handling these machines during
that time; that he was notified by letter, or in some
manner, that the McCormick Company had sold out,
and soon after that he was employed by the appellant
and took the management of its business for the ter-
ritory stated. He also stated that his information
was that all of the machines named were still manu-
factured in the names of the original owners and at
the places stated; that, when he became the manager
of the appellant, he was placed in charge of all these
machines and was given the exclusive and sole right
to sell them, and to establish agencies within the
territory, and make and enter into contracts with the
agents. He stated that he established three agencies
which he believed were in Trimble county—one with
Peak, Wentworth & Co., one with Joyce & Co., and the
other with Engleman. These contracts, as well as
others made throughout the territory, were precisely
alike and fixed the same price at which each machine
was to be sold and for which price the agents were to
account to the company. The contract with Peak,
Wentworth & Co. was filed as part of the evidence.
The fifth clause of it contains the following: "To sell
all machines or property received under this contract
at such prices and on such terms as may be fixed in
writing by said company or its general agent in the
territory herein mentioned." Each and every agent
obligated himself to sell the machines under this pro-
vision of the contract. Soon after the execution of
this contract each of the agents received the following,
to-wit: "To our Agents: In accordance with clause
5 in our commission contract with you, we suggest the
following retail prices for 1905." Then follows the
list of machines, giving the prices charged to the

agents, and then fixes the prices at which the agents shall sell them, and then continues with matters that have no bearing upon the question at issue. Then continues as follows: "Please understand while the above are not fixed, or arbitrary prices, but are suggested for your benefit, we shall exhaust all honorable means in our power to have each and every local agent within our jurisdiction be governed by the above prices, for the reason that we are more anxious to have our agents make a legitimate profit on what machines they sell, as we are well aware of the fact that unless an agent can make profit on his machine business he will soon lose interest in pushing the sale of our goods." The contracts with these sales agents confined them to certain territory, and stipulate that, if they sold outside of this territory, their commission should be paid to the agent within that territory. In view of these facts, it is plain that there was no opportunity for competition between the owners and the agents representing these machines. The appellant, or some one, fixed the prices on all of them to the sales agents, and bound the sales agents to sell the machines on terms and for such prices as might thereafter be fixed in writing by the company or its general agent, and then bound the agents not to sell in each other's territory upon the pain of losing their commission. With these facts proven, we cannot say that there was no evidence to authorize a jury to find that the appellant had entered into an agreement with the owners of these machines named, or some one, to fix the price at which all the machines should be sold to the agents and farmers.

Appellant contends that the instruction gave the Trimble circuit court extraterritorial jurisdiction. In other words, counsel says that it authorized the jury to find appellant guilty for an offense committed out-

side of the State. In this he is mistaken; for the court told the jury, in effect, that they could not find against appellant unless they further believe from the evidence beyond a reasonable doubt that appellant committed the offense charged in Trimble county within 12 months before the finding of the indictment. The Legislature has not extraterritorial power to punish crime. The crime specified in the statute is the entering into, becoming a member of, or party to, any pool, trust ,etc., to fix the prices at which property may be sold in this State. If a foreign corporation doing business in this State enters into or becomes a member of a pool or trust beyond the limits of this State, then the crime is clearly committed beyond the limits of this State, unless the pool or trust is to fix the prices of property in this State, in which event the crime put in motion in the foreign State took effect and became complete in Kentucky. If the conspiracy is formed in another State to burn or destroy property in this State, the crime becomes complete when the property is destroyed, and the courts of this State would have the right to punish all of the conspirators, even though but one of them crossed the line and destroyed the property, provided he was acting in pursuance of the conspiracy. The General Assembly has the right to pass laws for the protection of the people of this State, and it enacted the statute referred to, and made it applicable to all corporations, whether organized in it or out of it, and to all persons and associations of persons, but the statute cannot apply unless the offense is committed within this State. 8 Cyc. 687, lays down the rule as follows: "The venue in an indictment for conspiracy may be laid in the county in which the agreement was entered into, or in any county in which any overt act was done by one of the conspirators in furtherance of the common de-

International Harvester Co. of America v. Commonwealth.

sign.   If the conspiracy is entered into within the jurisdiction of the court, the parties thereto are triable in that jurisdiction, notwithstanding the offense was to be committed without the jurisdiction; and, if a conspiracy is formed without the jurisdiction, an overt act committed by one of the conspirators within the jurisdiction is evidence of the crime within the jurisdiction where the overt act is committed." In the case of the People v. Mather (N. Y.), 21 Am. Dec. 146, the court said: "In indictments for conspiracy the venue may be laid in any county in which it can be proven that any overt act was done by any one of the conspirators in furtherance of their common design." Archb. Crim., p. 6.   Then refers to several cases, and continues: "All these cases must proceed, I think, on the principle that the crime is committed where the overt act is performed.   I admit that it is the illegal agreement that constitutes the crime.   When this is concluded, the crime is perfect, and the conspirators may be convicted if the crime can be proved.   No overt act need be shown, or even performed, to authorize a conviction.   If conspirators enter into the illegal agreement in one county, the crime is perpetrated there, and they may be immediately prosecuted; but the proceeding against them must be in that county. If they go into another county to execute their plans of mischief, and there commit an overt act, they may be punished in the latter county without any evidence of an express renewal of their agreement.   The law considers that wherever they act that they renew, or, perhaps, to speak more properly, they continue their agreement, and this agreement is renewed or continued as to all whenever any one of them does an act in furtherance of their common design.   *   *   *   It necessarily follows that whenever a new party concurs in the plans originally formed, and comes in to aid in

the execution of them, he is from that moment a fellow conspirator. He commits the offense whenever he agrees to become a party to the transaction, and does any act in furtherance of the original design."

From the evidence it is certain that there was a combination or agreement, to fix the price of these machines referred to, entered into by the owners thereof, and possibly others. It is pretty certain that that agreement was made outside of this State, and if they had never come into this State to execute the agreement, or any part of it, they would not be liable to punishment here; but the proof shows that they were executing the agreement in this State, and possibly the agent of appellant, in this State, entered into the combination or agreement, after they entered this State, to carry out the agreement, and under the authority referred to such agent occupied the same position as the original parties to the unlawful agreement.

What we have said about instruction No. 1 obviates the necessity of a discussion of the instructions offered by the appellant.

At the last session of the General Assembly, in 1906, it enacted a statute to make it legal for farmers to unite and pool their crops, etc. The appellant claims that act is unconstitutional, and has the effect to make all of the statutes on the subject of pool, trust, combination, etc., unconstitutional. It is not necessary to determine this question, as the offense charged in the indictment was committed and the indictment found long before that act was passed. See section 465 of Kentucky Statutes of 1903, which reads as follows: "No new law shall be construed to repeal a former law as to any offense committed against the former law, nor as to any act done, any penalty, forfeiture, or punishment incurred, or any right accrued or claim

arising under the former law, or in any way whatever to affect any such offense or act so committed or done. or any penalty, forfeiture, or punishment so incurred, or any right accrued or claim arising before the new law takes effect." See, also, the case of Commonwealth v. Overby, 107 Ky. 169, 21 Ky. Law Rep. 843, 53 S. W. 36.

For these reasons, the judgment of the lower court is affirmed.