FLANIGAN, Judge.
A jury found defendant guilty of conspiracy to commit distribution of methamphetamine and marijuana, and he was sentenced, as a prior and persistent offender, to imprisonment for 12 years. Defendant appeals.
Defendant’s sole point is that the evidence is insufficient to support the conviction and that the trial court erred in denying his motion for judgment of acquittal at the close of all the evidence.
In reviewing defendant’s challenge to the sufficiency of the evidence, this court considers the evidence and all reasonable inferences arising therefrom in the light most favorable to the verdict and disregards those portions contrary to a finding of guilt. This court does not weigh the evidence nor determine the credibility of the witnesses. The test is whether the evidence, so viewed, was sufficient to make a submissible case from which rational jurors could have found beyond a reasonable doubt that defendant was guilty. State v. Garrett, 829 S.W.2d 622, 624 (Mo.App.1992). After the denial of defendant’s motion for judgment of acquittal, which was filed at the close of the state’s evidence, defendant introduced evidence in his own behalf. Accordingly, the sufficiency of the evidence to support the conviction will be determined on the basis of all the evidence, including those portions of defendant’s evidence which favor the state. State v. Thornton, 704 S.W.2d 251, 254 (Mo.App.1986).
Section 564.016[1] reads, in pertinent part:
1. A person is guilty of conspiracy with another person or persons to commit an offense if, with the purpose of promoting or facilitating its commission he agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such offense.
[[Image here]]
4. No person may be convicted of conspiracy to commit an offense unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.
In State v. Drinkard, 750 S.W.2d 630, 631 (Mo.App.1988), the court said:
A person is guilty of conspiracy to commit an offense if: 1) he has a purpose to promote or facilitate the commission of the offense, and 2) he agrees with one or more persons that they or one of them will engage in conduct which constitutes the offense and 3) at least one member of the conspiracy commits an overt act in pursuance of the agreement.
Before a conviction for conspiracy may be obtained, proof must be adduced that an overt act in furtherance of the conspiracy was committed. However, there is no requirement that such act be a physical one or be a substantial step in the commission of the target offense. State v. Jalo, 796 S.W.2d 91, 95 (Mo.App.1990). A conspiracy conviction may be had on the uncorroborated evidence of an accomplice unless such testimony is so lacking in probative force as not to amount to substantial evidence. Id. at 96. To show a conspiracy, it is not necessary that there be direct evidence of an explicit agreement between two or more persons. The agreement can be established by circumstantial evidence and need show no more than a tacit understanding among the participants. State v. Revelle, 809 S.W.2d 444, 447 (Mo.App.1991).
A declaration by one co-conspirator in furtherance of the object of the unlawful combination is admissible on these conditions: There must be “independent and preponderant” evidence of a conspiracy be *210 tween the declarant and the defendant, the declaration must be in furtherance of the object of the unlawful enterprise, and the declaration must be made while the unlawful common purpose continues to exist. State v. Anding, 689 S.W.2d 745, 753[8] (Mo.App.1985). Defendant on this appeal has not challenged the admissibility of any of the evidence to be recounted.
In addition to its formal portions and allegations of defendant’s prior convictions, the information charged that the defendant committed the class B felony of conspiracy to distribute marijuana and methamphetamine “in that on or about the 15th day of August, 1987, in Lawrence County, Missouri, the defendant with the purpose of promoting and facilitating the offense of distribution of methamphetamine and marihuana, controlled substances, agreed with Augie Hagebusch, Robert Townsend and Joe Blackburn that they would distribute methamphetamine and marihuana, controlled substances, and on or about May 10, 1988, the defendant with the same purpose agreed with one or more of said persons to commit the offense of distribution of methamphetamine and marihuana, controlled substances, and in furtherance in the conspiracy, one or more of said persons obtained marihuana or they obtained methamphetamine, or they met to weigh or package methamphetamine.”
Floyd [Augie] Hagebusch testified that there was a meeting at Jolly Mills in Barry County, attended by Joe Blackburn, Robert Townsend, Harold Huffman, defendant and the witness. Robert Townsend testified that the meeting took place in 1987. According to Hagebusch, the meeting was to “check on” a better supply of methamphetamine and marijuana. The five men were sitting at a picnic table.
Hagebusch testified: [Defendant] was head of the organization which was called “The Group”; when I got in the organization, I agreed to sell all the drugs I could get hold of; the meeting at Jolly Mills was the first meeting when there was an agreement for the distribution of drugs, and [defendant] was there; I heard what [defendant] said that night; “The Group” were four or five guys who got together and “done” some transactions; at the meeting at Jolly Mills, we discussed getting a supply of marijuana; I was in competition with Blackburn who was selling marijuana and methamphetamine; I continued to purchase drugs through the group for close to two years; I sold methamphetamine and marijuana in 1987 and 1988; we discussed the prices of what we would sell it for and who would sell what where; I was to buy methamphetamine for $275 for an 8-ball and sell it for $350; the low price on marijuana was about $1,400 a pound, and I would sell it between $1,600 and $1,800 a pound; we discussed getting a supply of marijuana; Blackburn and Townsend told me they were getting marijuana and methamphetamine from defendant.
Hagebusch further testified: We discussed the territories I was going to sell it in; we were kind of stepping on each other’s toes and we sectioned it off; my area was Monett and Cassville; [defendant] was there when the territories were discussed.
On May 10, 1988, a meeting was held at defendant’s residence in Pierce City, which is in Lawrence County.[2] According to Hagebusch, the people there included Townsend, Blackburn, Huffman, defendant and Hagebusch.
On this occasion, Police Chief Frank Preston observed that a meeting was going on in defendant’s garage and that a vehicle was improperly parked in the alley. The vehicle belonged to Steve Young, and Chief Preston talked to Young about the vehicle. Preston testified that defendant was very agitated and was doing a lot of yelling and screaming at Townsend.
Hagebusch testified: At the May 10 meeting in [defendant’s] garage, “we” were weighing some methamphetamine; when I was weighing the methamphet *211 amine [defendant] was standing there by a bench-like thing; before I weighed the methamphetamine it was in a big ziplock baggie; the baggie was about the size of a 1/4 pound sandwich bag, 6 to 8 inches wide and 8 or 9 inches tall; I would estimate 2 or 3 ounces of methamphetamine was in that bag; we were cutting it up into 8-balls; it was to be distributed to Blackburn and Townsend and me; I paid Blackburn and Townsend, and they paid [defendant]; “they” were in the process of weighing methamphetamine up in 8-balls, which is an eighth of an ounce; “just everybody was doing that”; the weighing up of the drugs was done mainly by Townsend; I am sure it was methamphetamine because I used some of it that day; I had used methamphetamine for about two years before I was arrested; I continued to purchase the drugs through the group for almost two years; I was selling about one ounce a week, and I could sell two or three pounds of marijuana a day.
Jo Lynn Fly, a state’s witness, testified that Townsend got his methamphetamine and marijuana from defendant. She said that in the fall of 1987 Townsend, Huffman, Blackburn, Hagebusch and defendant would meet at Jolly Mills “for the privacy and darkness.” She said the purpose was to get Hagebusch into the group. Townsend would get the methamphetamine from defendant, and Townsend would take it to Augie and Augie would sell it. I have seen defendant hand methamphetamine to Townsend. Townsend would bring the “dope” to Augie’s trailer and they would sit there and talk about how much they had to divide and how much Augie had to pay, and then Townsend would have to pay defendant for it.
Defendant testified that on May 10,1988, he was at his home in Pierce City “when Chief Preston showed up at my garage.” Other people there were “Joe, Harold, Robert and I, and maybe Hagebusch.”
Defendant’s brief says:
There was evidence that [defendant] knew the alleged conspirators, was present when they discussed drugs in Jolly Mills, that he owned the garage in which these other persons met and weighed drugs and that he sold drugs to Townsend, Blackburn and Fly. [Defendant] denies that this is evidence of a conspiracy even if it is evidence of distribution of drugs.
From the foregoing evidence the jury reasonably could find that a meeting took place at Jolly Mills, attended by five men including defendant. It was a meeting of “The Group” of which defendant was the head. The five men were sitting at a picnic table and discussed territories for the sale of methamphetamine and marijuana and prices to be charged. Defendant was the source of the marijuana and methamphetamine. On May 10, 1988, at defendant’s residence in Lawrence County, in the presence of the defendant and several of the same men, methamphetamine was weighed with the use of scales located in defendant’s garage. A substantial amount of methamphetamine was weighed.
The happenings at Jolly Mills were sufficient to support a finding of conspiracy to commit the offense of distributing marijuana and methamphetamine, and the happenings on May 10, 1988, at defendant’s residence in Lawrence County were sufficient to constitute an overt act in furtherance of the agreement. This court holds that the evidence is sufficient to support the conviction.
The judgment is affirmed.
MONTGOMERY, P.J., and PREWITT, J., concur.

. All references to statutes are to RSMo 1986, V.A.M.S.

. With an exception not applicable here, § 541.-033 provides that a defendant shall be prosecuted in the county in which the offense is committed or "if the offense is committed partly in one county and partly in another, or if the elements of the crime occur in more than one county, then in any of the counties where any element of the offense occurred."