**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Keith Jerry DRINKARD,
Defendant–Appellant.**

No. 15012.

Missouri Court of Appeals,
Southern District,
Division Two.

April 25, 1988.

Motion for Rehearing or Transfer
Denied April 25, 1988.

Application to Transfer Denied
June 14, 1988.

Charles M. Shaw, Shaw, Howlett & Schwartz, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Jeffrey Philip Dix, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOGAN, Judge.

A jury has found defendant Keith Jerry Drinkard guilty of conspiracy to sell Lysergic Acid Diethylamide (LSD) in violation of § 564.016, RSMo 1978, § 195.020, RSMo Supp.1983 and § 195.017.2(4), RSMo 1978. Defendant's punishment has been assessed at imprisonment for a term of ten (10) years. He appeals. We affirm.

■ The defendant contends that the information filed was insufficient to invoke the jurisdiction of the court. We must examine this assignment of error first, because if the information was insufficient, the court acquired no jurisdiction and whatever transpired thereafter was a nullity. *State v. Gilmore,* 650 S.W.2d 627, 628[2] (Mo. banc 1983); *State v. Brooks,* 507 S.W.2d 375, 376 (Mo.1974); *State v. Hasler,* 449 S.W.2d 881, 884 (Mo.App.1969). The test

of sufficiency of an information is whether it contains all essential elements of the offense as set out in the statute and clearly apprises defendant of the facts constituting the offense. *State v. Gilmore,* 650 S.W.2d at 628; *State v. Garrett,* 627 S.W.2d 635, 637 (Mo. banc 1982), *cert. denied,* 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982); *State v. Downs,* 593 S.W.2d 535, 540 (Mo. 1980).

A person is guilty of conspiracy to commit an offense if: 1) he has a purpose to promote or facilitate the commission of the offense, and 2) he agrees with one or more persons that they or one of them will engage in conduct which constitutes the offense and 3) at least one member of the conspiracy commits an overt act in pursuance of the agreement. Section 564.016, RSMo 1978; The New Missouri Criminal Code: A Manual for Court Related Personnel § 9.3, p. 4 (1978) [hereinafter *Manual* ].

■ The accusatory part of the information filed in this case charged "... that the defendant, either acting alone or knowingly in concert with another ... committed the class B felony of conspiracy, ... *in that at some time or times between November 1, 1983 and December 1, 1984, the defendant, with the purpose of promoting and facilitating the offense of sale of Lysergic Acid Diethylamide, ... a controlled substance, agreed with Donald Matthews that one or more of them would sell Lysergic Acid Diethylamide....*" (Emphasis supplied). The information further charged the commission of nine (9) overt acts in pursuance of the conspiracy. We conclude the information sufficiently charged those acts which constitute conspiracy as defined and denounced by § 564.016, RSMo 1978.

■ The time of the offense is also sufficiently charged. Generally, an information need not state a specific time when a crime was committed unless time is of the essence of the offense charged, *State v. Murray,* 609 S.W.2d 192, 196[2, 3] (Mo.App. 1980), and in any event the averment that the defendant and others conspired "at some time or times between November 1, 1983 and December 1, 1984," sufficiently alleged the date of the crime. *United*

*States v. Grubb,* 527 F.2d 1107, 1109 (4th Cir.1975); *United States v. Hosier,* 50 F.2d 971[2] (W.D.La.1931). Moreover, even though the agreement may, within its scope, have included more than one criminal act in sequence, there was but a single conspiracy. *State v. Welty,* 729 S.W.2d 594, 598 (Mo.App.1987).

Contrary to the State's assertion, however, the information does not follow the approved charge—MACH–CR 18.04—because it does not allege the situs or place of the agreement, although it does charge that four (4) of the nine (9) overt acts committed in furtherance of the conspiracy were committed in Cape Girardeau County. The State's failure to allege the place where the conspiracy was formed raises three interrelated questions: 1) Was it necessary to allege the place where the conspiracy was formed in view of the fact that the pleader averred commission of overt acts in furtherance of the conspiracy in Missouri? 2) Did the Circuit Court of Cape Girardeau County have jurisdiction to try the defendant because acts in furtherance of the conspiracy were committed in that county? and 3) Do the allegations that overt acts were committed in Cape Girardeau County fix the venue of the prosecution in that county? For our immediate purposes, "jurisdiction" refers to the power to hear and determine a criminal prosecution; "venue" means the particular county in which the prosecution should be brought or tried.

■ The first question was answered many years ago by the United States Supreme Court in *Brown v. Elliott,* 225 U.S. 392, 32 S.Ct. 812, 56 L.Ed. 1136 (1911). In that case, the indictment alleged that the conspiracy was formed at some place unknown to the grand jury. Overt acts were alleged to have been committed in Nebraska. Answering the contention that the District Court of Nebraska had no jurisdiction, the court held that insomuch as the place of the overt act may be the place of jurisdiction, it followed that the exact place where the conspiracy was formed need not be alleged. *Brown v. Elliott,* 225 U.S. at 401, 32 S.Ct. at 815, 56 L.Ed. at 1140. *See*

*also Walker v. United States,* 116 F.2d 458, 461–62[1] (9th Cir.1940); *State v. La Fera,* 35 N.J. 75, 171 A.2d 311, 318–19[12] (1961). Failure to allege the place of the conspiracy was therefore not fatal, if the allegation that overt acts were committed in Cape Girardeau County conferred jurisdiction upon this State and properly laid the venue of the prosecution.

■ As a broad, general principle it may be said that jurisdiction in criminal matters rests solely in the courts of the state or country in which the crime is committed, and the laws of that state or country govern the nature of the offense. 21 Am.Jur. 2d Criminal Law § 343, p. 596 (1981). The jurisdictional situs of the crime of conspiracy depends to some extent upon the statutory requirement of an overt act for commission of the crime. A reliable treatise states:

"As to conspiracy, at least where it is defined as an agreement plus an overt act, if an agreement is entered into in state A to commit a crime in state B, and an overt act takes place in state B then state B is the situs of the conspiracy. However, when no overt act is required for the commission of conspiracy, it has been held that an agreement in state A to commit a crime in state B, is a conspiracy with its situs in state A. Also, similar to the rule noted earlier as to larceny, conspiracy has sometimes been viewed as a continuing offense which may have its situs in more than one jurisdiction; the situs may be the place of original agreement and also those states in which acts in furtherance of the agreement are undertaken...."

1 W. LaFave and A. Scott, Substantive Criminal Law § 2.9, p. 184 (1986). We consider it unnecessary to state a precise rationale for our ruling in this case. It is sufficient to say and we hold that this State has jurisdiction to prosecute a charge of conspiracy if the substantive criminal object of the conspiracy was committed in this State, although the conspiratory agreement was made in another state and one of the conspirators was not in this State when the object of the conspiracy was accom-

plished. *Ex parte Morgan,* 86 Cal.App.2d 217, 194 P.2d 800, 805[11–15] (1948); *International Harvester Co. v. Commonwealth,* 124 Ky. 543, 99 S.W. 637, 639–40 (1907); *State v. Goldberg,* 261 N.C. 181, 134 S.E.2d 334, 349[12, 13] (1964), *cert. denied,* 377 U.S. 978, 84 S.Ct. 1884, 12 L.Ed.2d 747 (1964); 16 Am.Jur.2d Conspiracy § 21, p. 235 (1979). Since this case was tried, the question of jurisdiction presented on this appeal has been settled by enactment of Laws of Mo.1987, H.B. No. 341 § 1, now codified as § 541.191, RSMo Supp. 1987.[1]

The decisions which address jurisdiction of a prosecution for conspiracy overlap the cases which discuss the venue of such a prosecution. A common-law case often cited and often taken to state the principle which determined the proper venue of a prosecution for conspiracy at common law is *The King v. Brisac,* 4 East 164, 102 Eng.Rep. 792 (1803). In that case the conspiracy was formed at sea but an overt act was committed in Middlesex County. Upon the question of venue the court gave as its opinion:

"... If it were necessary ... to consider how far every count in this information has been established by the evidence adduced, so as to bring every one of them within the jurisdiction of this Court, it would be to be recollected that conspiracy is a matter of inference, deduced from certain criminal acts of the parties accused, done in pursuance of an apparent criminal purpose in common between them, and which hardly ever are confined to one place; and that from analogy, there seems to be no reason why the crime of conspiracy ... may not be tried wherever one distinct overt act of conspiracy is in fact committed...."

*Id.,* 4 East at 170–71, 102 Eng.Rep. at 795.

In *Hyde v. United States,* 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1911), the indictment charged that the conspiracy was formed in the District of Columbia and that certain of the required overt acts were performed there and others in California. On certiorari, the United States Supreme Court stated, 225 U.S. at 357, 32 S.Ct. at 798, 56 L.Ed. at 1122:

"The question, therefore, is presented as to the venue in conspiracy cases, whether it must be at the place where the conspiracy is entered into, or whether it may be at the place where the overt act is performed, the 6th Amendment of the Constitution of the United States requiring all criminal prosecutions to be in the 'district wherein the crime shall have been committed.' "

The court discussed the law at length, quoting the District Judge. The opinion is very instructive. We quote:

" 'At common law the venue in conspiracy could be laid in any county in which it could be proven that an overt act was done by any one of the conspirators in furtherance of their common design. 1 Archbold, Crim.Pr. & Pl. 8th ed. p. 226.

" '... In *People v. Mather,* 4 Wend. 261, 21 Am.Dec. 122, Marcy, J., in delivering the opinion of the court, said:

" 'I admit that it is the illegal agreement that constitutes the crime. When that is concluded the crime is perfect, and the conspirators may be convicted if the crime can be proved. No overt act need be shown or ever performed to authorize a conviction. ... If [the conspirators] go into another county to execute their plans of mischief, and there commit an overt act, they may be punished in the latter county without any evidence of an express renewal of their agreement. The law considers that wherever they act, there they renew, or perhaps, to speak more properly, they continue, their agreement, and this agreement is renewed or continued as to all whenever any one of them does an act in furtherance of their common design.

" '... If this was the law of venue in conspiracies at common law, where proof of an overt act was not necessary to

**1.** Section 541.191.1(2) provides, in pertinent part: "1. This state has jurisdiction over an offense that a person commits by his own conduct ... if: ... (2) The conduct outside this state constitutes an attempt or conspiracy to commit an offense within this state and an act in furtherance of the attempt or conspiracy occurs within this state; ...."

show a completed offense, the same rule can be urged with much greater force under [the statute applicable to the case], as the offense described therein for all practical purposes is not complete until an overt act is committed....' "

*Hyde v. United States,* 225 U.S. at 365–66, 32 S.Ct. at 801–2, 56 L.Ed. at 1125–26. Another federal precedent often cited is *United States v. Jenks,* 258 F. 763, 764[4] (E.D.Pa.1919), wherein it was held that an indictment for conspiracy was not fatally defective where it alleged the place where the overt acts charged were done, although the venue of the conspiracy was not set out. *See also Steffler v. State,* 230 Ind. 557, 104 N.E.2d 729, 733–34 (1952).

We believe and hold that the information filed was sufficient to charge the crime of conspiracy as defined and denounced by § 564.016, RSMo 1978. The information was sufficient to invoke the jurisdiction of the Circuit Court of Cape Girardeau County and the venue of the prosecution was properly laid. The assignment of error is without merit.

The defendant also challenges the sufficiency of the evidence. In assessing the sufficiency of the evidence, we must accept as true all evidence and inferences that tend to support the verdict and disregard all evidence and inferences to the contrary. *State v. Brown,* 660 S.W.2d 694, 698–99 (Mo. banc 1983). So taken and considered, the evidence was that from November 1983 through December 1984, Don Matthews lived in Cape Girardeau with his wife and children. On three occasions between May 14 and June 16, 1984, Matthews sold lysergic acid diethylamide (LSD) to Floyd Porter. On May 14, 1984, Matthews sold Porter 300 "hits" of LSD for $600.[2] On May 21, 1984, Matthews sold Porter 200 hits of LSD for $400. On June 16, 1984, Matthews sold Porter 100 hits of LSD for $200. The three sales were all consummated in Cape Girardeau County.

Matthews testified that he obtained the LSD which he sold to Porter from the

defendant in Pontiac, Michigan. A recitation of some of Matthews' testimony will be helpful:

\* \* \* \* \* \*

"Q. How many times did you go to Pontiac, Michigan to buy LSD from Keith Drinkard?

A. Six or seven.

Q. All these six or seven times between November 1st, 1983 and December of 1984?

A. Yes, sir.

Q. Now, Mr. Matthews, did you and Mr. Drinkard have an agreement or understanding as to what you were going to do with that LSD you bought from him?

A. We discussed the price. I tried to get him to lower the price so I could make more money.

Q. You say you tried to get him to lower the price so you could make more money. Did you specifically tell him that you were going to be selling it?

A. Yes, sir."

\* \* \* \* \* \*

On cross-examination, Matthews further explained his dealing with the defendant. He testified that he went to Pontiac in November 1983. He rented a motel room and called the defendant, to whom he had been introduced by one Jim Fiscus. At that time, Matthews purchased 2,000 hits of LSD from the defendant. Fiscus "handed" the cash to the defendant, but the money "was [Matthews'] money." There was evidence that a typical user of LSD could or would use a single hit, or possibly two, in one day, but no more. Further, a person who used LSD would not use it every day; he would be unable to function. There was no question that the defendant sold LSD to Matthews, nor is there any question that LSD is a controlled substance.

■ As we have said, an accused is guilty of conspiracy to commit an offense if: 1) he has a purpose to promote or

---

**2.** The noun "hit" in context is defined as a single dose of a narcotic drug. Webster's Ninth New Collegiate Dictionary 573 (1983). Apparently,

LSD is ingested in very small quantities. The evidence was that a "hit" of LSD is "[n]o bigger than a pinhead."

facilitate the commission of the offense; 2) he agrees with one or more persons that they or one of them will engage in conduct which constitutes the offense, and 3) at least one member of the conspiracy commits an overt act in pursuance of the agreement. *Manual,* § 9.3, p. 4. The evidence we have recited clearly shows that elements (1) and (3) were established. The defendant had a purpose to promote the commission of the offense; he sold a controlled substance to Matthews or to Matthews and Fiscus with knowledge that they intended to sell it to others. There is no question that at least one member of the conspiracy committed three overt acts. What the defendant argues is that there was no "agreement." This court addressed the substance of the defendant's argument in *State v. Welty,* 729 S.W.2d 594. The court concluded "... that a person can be guilty of conspiracy with one or more other persons to commit a particular offense if, with the requisite purpose *'he agrees* with such other person or persons *that* they or *one* or more *of them* will engage in conduct which constitutes such offense.' " *Welty,* 729 S.W.2d at 596 (emphasis in original). The court observed that by enacting § 564.016 the General Assembly had adopted a unilateral theory of conspiracy, and held:

"... The proscribed offense is committed if a person with the purpose of promoting or facilitating the commission of an offense 'agrees' with another person or persons that at least one of them will engage in conduct which constitutes such offense. § 564.016.1. Furthermore, while at least two individuals obviously must be involved when the defendant 'agrees,' our conspiracy statute 'focuses upon the conduct of one person' regardless of the subjective intent of the other. [Citations omitted.]"

*Welty,* 729 S.W.2d at 597. The court finally concluded that the requisite agreement can be established by circumstantial evidence and need show no more than a tacit understanding among the participants. *Welty,* 729 S.W.2d at 597. In this case the fact that the defendant sold a quantity of LSD too large to be used by the possessor alone justified the conclusion that Matthews' possession was for distribution rather than personal consumption. *Welty,* 729 S.W.2d at 598. There was direct evidence that the defendant sold LSD to Matthews and Fiscus with knowledge that they intended to resell it. A jury may infer agreement and joint responsibility from the fact that the accused aided with knowledge of the unlawful enterprise. *Alexander v. United States,* 95 F.2d 873, 880 (8th Cir. 1938). There was ample evidence to support the judgment of conviction.

A further point is that the trial court erred "in allowing Exhibits 5, 6 and 7 to be played to the jury in that said exhibits were phone calls placed by a DEA agent with the intent to entrap defendant into a current or future crime. The said tapes were immaterial and irrelevant to prove the crime charged, to-wit conspiracy. Trial court's failure to exclude said tapes from evidence and overruling defendant's repeated objections thereto constituted prejudicial error."

■ The point is so diffuse it is difficult to understand. Exhibits 5, 6 and 7 were tape recordings of telephone conversations had between the defendant and Matthews on August 10, August 15 and September 4, 1984. The recordings were made at the instigation of a DEA agent after Matthews had been taken in custody. As the tapes were offered in evidence, counsel for defendant was either asked if he had an objection and stated that he had none or volunteered that he had no objection to reception of the tape. The tapes are subject to the rule that evidence introduced without objection is in the case for all purposes and constitutes evidence, the probative value of which is for the jury. *State v. Sammons,* 640 S.W.2d 488, 489[2] (Mo.App. 1982); *State v. Bradley,* 515 S.W.2d 826, 828[2] (Mo.App.1974).

In this court, defendant objects to the trial court's allowing the tapes to be played for the jury on the ground that the conversations between Matthews and the defendant were irrelevant. We cannot agree. The conversations which were recorded dealt with the procurement and sale of

controlled substances by Matthews and the defendant. The tapes indicated the defendant's complicity in a scheme to sell LSD because the defendant's statements constituted admissions against interest. *State v. Mueller*, 598 S.W.2d 564, 567 (Mo.App. 1980). There may be some reason why the tapes should not have been played for the jury, but the trial court's decision to allow the jury to hear them was not erroneous for any reason advanced in this court.

The defendant's final assignment of error, as presented, is that "The trial court committed prejudicial error in overruling defendant's motions for a new trial based on prosecutorial misconduct. Prosecutor's opening and closing statements were concerned with irrelevant and immaterial, inflammatory and prejudicial matters to such an extent as to bias and prejudice the jury causing defendant to be denied a fair trial. The trial court should have granted defendant's various motions for mistrial."

The point is so broadly stated that it constitutes little more than an invitation to review the opening and closing arguments sua sponte for error prejudicial to the defendant. Examination of the "argument" part of the defendant's brief discloses that this point is also directed to the admission of the taped telephone conversations. As for the opening statement, it is sufficient in this case to say that the scope and manner of the opening statement is largely within the discretion of the court which necessarily must rely upon the good faith of counsel in making statements to a jury as to material facts they intend to prove. *State v. Brooks*, 618 S.W.2d 22, 24 (Mo. banc 1981). In its opening statement, the State referred to the tapes of the telephone conversations between Matthews and the defendant. The prosecutor advised the jury that "... [i]n addition to these discussions about the price and quantity of LSD you will hear Keith Drinkard when Donny Matthews says he has a partner to supply part of the money, who is the partner? Is he a cop or what, man? Well, you know ...".

■ At this point, defense counsel objected that the State was arguing hearsay. The State replied that it certainly expected the evidence to be admissible. When the prosecutor has reasonable grounds to believe that the facts stated can be proved, the statement is not improper. *State v. Grant*, 702 S.W.2d 857, 863 (Mo.App.1985). There is no reason to believe the prosecutor did not think the evidence to which he referred was admissible, and indeed the defendant has presented no reason why the tapes should have been excluded from the jury's consideration.

As for the State's closing argument, the defendant's contention, as we make it out, is that the prosecutor argued the probative effect of the tapes and quoted the lyrics from a ballad called "Smuggler's Blues." It is not necessary to lengthen this opinion unconscionably by discussing the State's closing argument in detail. A prosecutor may state his conclusions if they are fairly drawn from the evidence and his inferences need not seem necessarily warranted. *State v. Newlon*, 627 S.W.2d 606, 617 (Mo. banc 1982), *cert. denied*, 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982); *State v. Jackson*, 499 S.W.2d 467, 471 (Mo.1973). Broad discretion rests with the trial court in the control of closing argument, and wide latitude is accorded counsel in their summations. *State v. Newlon*, 627 S.W.2d at 616. We find nothing so improper in the State's opening and closing arguments as to prejudice the defendant, and no abuse of discretion.

We find no error in any respect briefed in this court, and accordingly the judgment is affirmed.

FLANIGAN and MAUS, JJ., concur.

PREWITT, P.J., dissents.

PREWITT, Presiding Judge, dissenting.

I respectfully dissent. I do not believe that the evidence established beyond a reasonable doubt that there was agreement to sell LSD.

It may have been obvious to defendant that Donald Matthews was going to sell the LSD he purchased from defendant. However, there is a difference between an *intention* to sell and an *agreement* to sell.

An agreement is required by § 564.016.1, RSMo 1978. It states:

Conspiracy.—1. A person is guilty of conspiracy with another person or persons to commit an offense if, with the purpose of promoting or facilitating its commission he agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such offense.

"The essence of the crime of conspiracy is an agreement to commit a crime." *State v. Fetty*, 654 S.W.2d 150, 153 (Mo.App. 1983). *State v. Hohensee*, 650 S.W.2d 268, 275–276 (Mo.App.1982), states that § 564.016.1, RSMo 1978, "focuses upon the conduct of one person" and it is sufficient if that one person alone agrees to commit the offense. See also *State v. Mace*, 682 S.W.2d 163, 165–166 (Mo.App.1984).

Here, however, the evidence was not that there was any agreement by anyone to sell, merely that defendant knew or should have known that it would be resold. Aiding someone in a sale may constitute a tacit understanding of an agreement in certain situations but I do not see how that could occur here.