STATE of Missouri,
Plaintiff–Respondent,

v.

Michael D. REVELLE,
Defendant–Appellant.

STATE of Missouri,
Plaintiff–Respondent,

v.

Michael D. REVELLE,
Defendant–Appellant.

Michael D. REVELLE,
Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 16665, 16953 and 16958.

Missouri Court of Appeals,
Southern District,
Division One.

May 17, 1991.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent-respondent.

James M. McClellan, Demptster, Barkett & McClellan, Sikeston, for defendant-appellant-movant-appellant.

MAUS, Presiding Judge.

Defendant Michael D. Revelle was charged by indictment with conspiracy to sell marijuana. A jury found defendant guilty and assessed a 15–year sentence. The trial court on October 31, 1989 sentenced defendant in accordance with the jury verdict. Defendant filed a notice of appeal from the original sentence, Case No. 16665. On April 10, 1990, on its own motion and on a stipulation by the state, the trial court set aside that sentence and imposed a sentence of seven years. The trial court assumed that by reason of the repeal of § 195.020 RSMo 1986 and the enactment of the "Comprehensive Drug Control Act of 1989", §§ 195.005 to 195.425 RSMo Supp.1990, § 1.160 was applicable. Defendant also filed a notice of appeal from the resentencing, Case No. 16953. This was apparently done to insure a review of defendant's conviction. The appeals in Case Nos. 16665 and 16953 were consolidated.

The defendant also filed a Rule 29.15 motion. That motion was denied. Defendant filed a notice of appeal from that denial, Case No. 16958. That case was consolidated with Case Nos. 16665 and 16953. Defendant has briefed no assignment of error on his Rule 29.15 motion and the appeal in Case No. 16958 is abandoned. Rule 30.06. *Thummel v. King,* 570 S.W.2d 679 (Mo. banc 1978); *State v. Sumowski,* 792 S.W.2d 381 (Mo.App.1990); *State v. Maxson,* 755 S.W.2d 277 (Mo.App.1988). On his direct appeals from the initial sentencing and his resentencing, defendant states four points of error.

■ Defendant's first point contends the evidence was insufficient to support his conviction for conspiracy to sell marijuana. In reviewing the evidence, we "must accept as true all evidence and inferences supportive of the verdict and disregard contrary evidence and inferences; viewed in that light, we must determine whether a submissible case was made." *State v. Evans,* 802 S.W.2d 507, 514 (Mo. banc 1991). So viewed, the record establishes the following facts.

■ From June 1986 to February 1987, John Curry (Curry) worked for John Webb (Webb) in Webb's marijuana selling operation. As part of his employment with Webb, Curry would break up one-hundred pound cubes of marijuana into one pound packages. Between July and November 1986, Webb sold defendant marijuana at least four times, in amounts ranging from one half pound to three pounds each time. Between December 1986 and January 1987, Curry observed defendant purchasing three or four pounds of marijuana a week from Webb. Curry also testified that the defendant told him he was reselling the marijuana he bought and gave Curry the names of three people to whom he had resold it. Defendant always paid for the marijuana in cash at $825–850 per pound. There was testimony indicating that even a very heavy marijuana smoker could personally use only about ⅛th of a pound of marijuana in one week.

There was also evidence that in February 1987 Curry began to work for Roy Dean (Dean), Webb's supplier of marijuana, and live in Dean's home. In addition to breaking up cubes of marijuana as he had done for Webb, Curry made trips to Kansas City, St. Louis and East Prairie delivering marijuana for Dean. Defendant began purchasing marijuana from Curry instead of Webb because it was less expensive. Defendant bought five or six pounds of marijuana once a week, paying $700 cash per pound. In the spring of 1987, Curry witnessed defendant attempting to collect money from someone to whom he had sold marijuana.

As stated, the defendant's first point is "there was no substantial credible evidence adduced at trial to make a submissible case of defendant conspiring with Johnnie Webb to sell marijuana". In support of that point, he argues "there is no evidence that anyone agreed to sell marijuana". He continues "[a]ssuming the Court agrees with Webb's testimony, there was an agreement that Webb would sell to Revelle. There was no agreement for a further sell [sic]." In essence, he contends the evidence is insufficient because there was no evidence of an express agreement between the defendant and Webb that the defendant would sell marijuana.

■ It is settled that there need not be direct evidence of an explicit agreement between two or more persons to establish a conspiracy as defined by § 564.016.

"'It is universally conceded that an agreement need not be express, although whether the idea of an implied agreement connotes only an unspoken, actual consensus or has broader fictional components is by no means clear.' Model Penal Code § 5.03 Comment 2(c)(iv) (footnote omitted).

In the Institute's view, neither combination as distinguished from agreement nor the analogy of partnership should be included in the formal definition. If a consensus is demanded, it is clearly indicated by demanding an "agreement," which need not, of course, be formal or, indeed, explicit in the sense that it is put in words.

Id. Also see *United States v. Mohr*, 728 F.2d 1132 (8th Cir.1984), cert. denied, 469 U.S. 843, 105 S.Ct. 148, 83 L.Ed.2d 87 (1984).

\* \* \* \* \* \*

'The agreement can be established by circumstantial evidence and need show "no more than a tacit understanding among the participants." *United States v. American Grain & Related Industries*, 763 F.2d 312, 315 (8th Cir.1985).' *United States v. Raymond*, 793 F.2d 928, 932 (8th Cir.1986)." *State v. Welty*, 729 S.W.2d 594, 597–598 (Mo.App.1987). There was evidence that over the course of seven months Webb regularly sold marijuana to the defendant in far greater quantities than would be reasonably consumed for personal use. The extended course of dealing between Webb and the defendant provides a strong inference of an understanding the defendant would resell the large quantities of marijuana he purchased. In addition, there was evidence the defendant had stated he resold the marijuana. The evidence is sufficient to permit the jury to find the conspiracy charged. *State v. Welty*, supra; *State v. Drinkard*, 750 S.W.2d 630 (Mo.App.1988).

The defendant's second point is that the trial court erred in giving verdict directing Instruction No. 5 "because said instruction was not supported by any substantial evidence." As stated, this point is a rescript of his first point and should be denied on that basis. Examination of the argument under that point reveals a contention by the defendant that the date of the overt act charged and submitted, between July 1986 and January 1987, is outside of the period of conspiracy. The period of the conspiracy charged and submitted was July 1986 through October 1987. The date of the overt act falls within that period. The point is denied.

▄ Defendant next claims the trial court erred in overruling his motion for a new trial because there was evidence a juror had spoken with one of the state's witnesses during a recess. Bryon Benton, a close friend of the defendant, testified at the hearing upon the motion. He said that during the last recess of defendant's trial he saw one of the jurors walk up and say something to Highway Patrolman Terry Mills. He first said the two did not carry on a conversation and the patrolman merely waved the juror through the doorway. Later, however, Benton testified that the juror and the patrolman did talk, but he did not know what they talked about.

This claim of juror misconduct at the trial was first raised by defendant's motion for a new trial. Defendant did not allege nor present evidence that he was unaware of the misconduct until after the trial. "When allegations of juror misconduct are first presented in the motion for new trial, there *must be an affirmative showing* that both defendant and his attorney were ignorant of any juror misconduct until after the trial." *State v. Cooper*, 735 S.W.2d 85, 86 (Mo.App.1987). (Emphasis added.)

In addition,

"The facts of this case are similar to *State v. Eaton*, 504 S.W.2d 12 (Mo.1973), which involved a conversation between the complaining witness and a juror. In Eaton, the Missouri Supreme Court stated:

There has been no showing that anything relating to the case on trial was discussed during the conversation or that any prejudice to appellant's rights resulted ... 'While the conduct of a prosecuting witness in even innocently visiting with the jurors is to be avoided, nevertheless, the court had broad discretion in determining whether a mistrial should be declared.'

Id. at 22 (quoting *State v. Miles*, 364 S.W.2d 532, 536 (Mo.1963)). The opinion then affirmed the trial court's refusal to grant a mistrial." *State v. Cantrell*, 775 S.W.2d 319, 323 (Mo.App.1989).

▄ When considering juror misconduct, the trial court has wide discretion in deciding whether to declare a mistrial. *State v. Teter*, 724 S.W.2d 538 (Mo.App.1986). As in *State v. Cantrell*, 775 S.W.2d at 323, "there is likewise no evidence as to the topic of the conversation nor is there any indication of prejudice." The trial court did

not abuse its discretion in denying the motion and the defendant's third point is denied.

■ By his last point, defendant contends the trial court erred in allowing him to appear at trial *pro se* because his waiver of counsel was not voluntarily, intelligently and knowingly made. Defendant, under the Sixth and Fourteenth Amendments, is entitled to waive his constitutional right to counsel and represent himself pro se. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *State v. Gilmore*, 697 S.W.2d 172 (Mo. banc. 1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986). "Under Faretta, a state may not constitutionally haul a person into court and then force an attorney upon him when he insists on conducting his own defense." *State v. Herron*, 736 S.W.2d 447, 449 (Mo.App.1987).

In this case, defendant had hired and subsequently fired counsel prior to trial because he was dissatisfied with counsel's efforts on defendant's behalf. A pretrial hearing was held to determine how the case would proceed. After a preliminary discussion, the defendant said:

"Well I would like to have my trial Wednesday.

THE COURT: And I assume you have heard what [counsel] told me? What do you want to do? Are you wanting to represent yourself?

MR. REVELLE: Yeah."

The trial court then at great length advised the defendant of the difficulties in, and the peril of, self-representation. The trial court asked defendant about his knowledge of various trial procedures and parts of the pending trial including 1) voir dire, 2) opening statements and 3) closing arguments. Defendant was also repeatedly questioned by the trial court about the consequences of his waiver. His responses included the following. Defendant stated that he understood he would be held to the same rules of evidence and conduct as an attorney; he understood he could receive fifteen years' imprisonment if convicted; he was knowingly and intelligently waiving his right to counsel.

The trial court then conducted a very thorough inquiry concerning defendant's education and mental competency. At the conclusion of this phase of the inquiry, the following dialogue took place.

"THE COURT: Do you feel that your mind is free and clear and if you waive your right to counsel it is absolutely freely and knowingly and intelligently made?

MR. REVELLE: Yes, sir.

THE COURT: I think I have tried to point out, although to be rather briefly here, I think it's a bad decision and unwise for you to proceed without a lawyer. Do you understand that?"

The trial court recessed to allow defendant ample time to read the waiver of counsel form. The trial court instructed defendant to read the form line by line before he signed it. Before recessing so defendant could read the form, he again admonished the defendant.

"And, again, I want to caution you that in most instances self-representation is unwise and I have seen it in the years I have been on the bench and I have never seen an instance of that where I thought that a defendant has benefited himself by doing that. However, you do have a constitutional right to do that as long as you fully understand the consequences of it."

The trial court made an express determination of defendant's competency and that he voluntarily and knowingly waived counsel. That determination is supported by the record. The trial court was not required to believe the defendant's belated, self-serving protestations of a lack of understanding. See *Henderson v. State*, 786 S.W.2d 194 (Mo.App.1990). It did not do so. The judgment resentencing the defendant and the judgment denying his post-conviction motion are affirmed.

CROW, J., concurs.

PREWITT, J., dissents and files dissenting opinion.

PREWITT, Judge, dissenting.

I respectfully dissent. The conviction should be reversed and defendant discharged.

There was no evidence of a conspiracy, let alone evidence that might allow a jury to find such beyond a reasonable doubt. The principal opinion notes there was evidence that defendant had sold marijuana and that those he purchased from may have understood he would sell it. Also, he purchased marijuana frequently in amounts indicating it was more than for his personal use.

An agreement to sell was required by § 564.016.1, RSMo 1986. It states:

Conspiracy.—1. A person is guilty of conspiracy with another person or persons to commit an offense if, with the purpose of promoting or facilitating its commission he agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such offense.

"The essence of the crime of conspiracy is an agreement to commit a crime." *State v. Fetty*, 654 S.W.2d 150, 153 (Mo.App. 1983). Section 564.016.1, "focuses upon the conduct of one person" and it is sufficient if that one person alone agrees to commit the offense. *State v. Hohensee*, 650 S.W.2d 268, 275–276 (Mo.App.1982). Even if that is correct that there can be an agreement by one person, that was not shown. There was no evidence that defendant agreed to sell marijuana.

The principal opinion quotes from the Model Penal Code that there need not be an express agreement, but one can be implied by acts rather than words. Here, the acts may have established that defendant intended to sell the marijuana, but they do not establish that he agreed to sell it. The explanatory note to § 5.03 in the Model Penal Code states in part:

Guilt as a conspirator is measured by the situation as the actor views it; he must have the purpose of promoting or facilitating a criminal offense, and with that purpose must agree (or believe that he is agreeing) with another that they will engage in the criminal offense or in solicitation to commit it.

Further, Model Penal Code § 5.03 Comment 2(c)(iv) states:

*"Requirement of Agreement.* The Code requires an agreement by the actor that he or one with whom he agrees will commit, attempt, or solicit commission of a crime or that the actor will aid him in so doing or in planning so to do."

This case, *State v. Drinkard*, 750 S.W.2d 630 (Mo.App.1988); and *State v. Welty*, 729 S.W.2d 594 (Mo.App.1987), relied on in the principal opinion, all find a conspiracy to sell a controlled substance when none exists. Obviously, if the state's evidence was believed, defendant committed a crime or crimes, but not the one charged. To legitimize the prosecutor's error expands the conspiracy statute beyond what it says, to cover not only an agreement, but an intention.