STATE of Missouri, Plaintiff–
Respondent,

v.

Brian L. HICKS, Defendant–Appellant.

No. 21166.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 9, 1997.

---

1. This statute was amended in 1996.

Emmett D. Queener, Asst. Public Defender, Columbia, for Defendant–Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jill C. LaHue, Asst. Atty. Gen., Jefferson City, for Plaintiff–Respondent.

BARNEY, Judge.

Brian L. Hicks (Defendant) was charged by information with the class C felony of burglary. *See* § 569.170.[1] Following a trial by jury, Defendant was convicted of that charge and sentenced as a persistent offender to ten years imprisonment in the Missouri Department of Corrections. *See* § 558.016.

Defendant appeals, assigning two interrelated points of trial court error. First, Defendant argues that he was entitled to a mistrial and, alternatively, a new trial, because Juror Brill and Juror McIntosh, en-

---

1. All statutory references are to RSMo 1994.

gaged in conversations with one of the state's witnesses and the bailiff, disregarding the trial court's instructions not to communicate with anyone regarding Defendant's case. Second, Defendant maintains that the trial court erred when it failed to replace Juror McIntosh with the alternate juror when the case was submitted to the jury for its deliberation. Defendant argues that Juror McIntosh acknowledged a personal relationship/familiarity with one of the state's witnesses, and that the trial court had indicated its intention to replace Juror McIntosh but failed to do so.[2]

## I.

Defendant does not challenge the sufficiency of the evidence to support his conviction. On review, this Court views the evidence and all reasonable inferences therefrom in the light most favorable to the verdict and rejects all contrary evidence and inferences. *State v. Clemons*, 946 S.W.2d 206, 216 (Mo. banc 1997).

On April 14, 1995, Ms. Donna Walker arrived at her flower shop in Mansfield, Wright County, Missouri, and discovered the presence of two law enforcement officers. Mansfield Police Chief Dale McGaw and Trooper Stephen Grass of the Missouri Highway Patrol were at that location investigating a possible burglary to the business located next to Ms. Walker's when they noticed that a window was broken out from her business.

After entering her business with the two law enforcement officers, Ms. Walker discovered, *inter alia*, that approximately $20.00 was taken from the cash register and that a hammer was missing from underneath the counter where the cash register was located.

The two law enforcement officers were able to retrieve fingerprints from the broken window from where it was believed that the intruder gained access to Ms. Walker's business. The fingerprints were transferred to a "latent fingerprint card" which was then sent to the Missouri Highway Patrol Lab for analysis.

Criminalist Derese Herndon from the Highway Patrol Lab testified that she was able to identify the fingerprints on the latent fingerprint card as belonging to Defendant. Criminalist Herndon compared the fingerprints lifted from the crime scene to Defendant's known fingerprints and testified that "I identified—came to the conclusion that the known print—known ink print and the latent prints were made by the same person."

Defendant neither testified nor presented any evidence on his behalf.

## II.

Because Defendant's allegations of trial court error are inexorably linked, we review both assignments of error jointly. First, Defendant asseverates that the trial court erred in not granting him a mistrial and, alternatively, a new trial, when Juror Brill and Juror McIntosh engaged in conversations with one of the state's witnesses. We disagree.

We initially note that there is little or no evidence in the record to support Defendant's contention. Most of the evidence involved Juror McIntosh. At the close of the state's case-in-chief, Defendant moved for a mistrial based on juror misconduct. Defense counsel, Ms. Donna L. Holden, stated that she had been informed by a colleague, Mr. Brendan Maturen, then not present in the courthouse, that two jurors were observed in the hallway talking to law enforcement officials and the bailiff. When questioned by the trial court, defense counsel indicated that her source had not heard the substance of the conversation then taking place. The trial court queried the jury panel regarding whether any unauthorized communications were made with any law enforcement officials who were called as witnesses on behalf of the state. One juror responded. Juror McIntosh responded that he briefly spoke to Police Chief McGaw during a recess. He stat-

---

2. When the case was submitted to the jury for its deliberation, Defendant did not motion the trial court to replace Juror McIntosh, so, on appeal, he suggests that the trial court should have *sua sponte* replaced Juror McIntosh with the alternate juror. We note that *"[s]ua sponte* action should be exercised only in exceptional circumstances." *State v. Goble*, 946 S.W.2d 16, 19 (Mo.App.1997).

ed "I just asked him if his mother was still alive.... That's all I said." Juror McIntosh told the trial court that he did not discuss Defendant's case with Police Chief McGaw. The trial court determined there was no basis for a mistrial and stated "[i]f anything, at the very most, would be to dismiss Mr. McIntosh...." However, the trial court did not dismiss Juror McIntosh, nor did either counsel during the course of the trial seek to have Juror McIntosh replaced.

During post-trial proceedings, Defense counsel's colleague, Mr. Maturen, testified that he had observed two jurors in conversation with Police Chief McGaw. While Juror McIntosh was one of the jurors, there was uncertainty as to whether the other juror was Juror Brill. Although defense counsel Holden had not observed the incident among the two jurors and Police Chief McGaw, she stated that "we [Mr. Maturen and Ms. Holden] were able to identify them as being Jurors No. 10 and No. 11. And that would have been No. 10, John McIntosh, and No. 11, Junior Brill." However, no probative evidence was presented showing the substance of any conversation between Juror Brill and Police Chief McGaw. Under examination by the trial court, although Mr. Maturen gave a sketchy physical description of the jurors and the clothes they were wearing, it is clear that Mr. Maturen was not entirely sure who the two jurors were. The trial court asked him:

Q. Do you recall where those jurors who were discussing this issue of—or having the conversation with Chief McGaw were seated in the jury box, front row, back row, right, left? Do you recall their position?

A [Mr. Maturen] I—I don't honestly recall.

...

Q. Do you recall even their position?

A. If I had to say, I would say that they were on the front row towards the right half, but not at the end.

Q. Okay. But you said, if you had to say. I'm not asking you if you have to say. I'm just asking you if you know.

A. Well, that would be my best recollection. But I'm not—

Q. Okay.

A. I'm not positive.

▆▆ Initially, we note that granting a mistrial is a drastic remedy that should be used only when necessary to cure grievous prejudice. *State v. Smith,* 944 S.W.2d 901, 917 (Mo. banc 1997). The decision to overrule a motion for mistrial or a motion for new trial will not be overturned absent a finding that the trial court abused its discretion. *See id.* Further, trial court decisions regarding alleged juror misconduct will not be disturbed on appeal absent a finding of abuse of discretion. *State v. Brown,* 939 S.W.2d 882, 883 (Mo. banc 1997).

▆▆ A trial court will be found to have abused its discretion when a ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said the trial court abused its discretion. *Id.* at 883–84 (quoting *Shirrell v. Missouri Edison Co.,* 535 S.W.2d 446, 448 (Mo. banc 1976)).

▆▆ "[W]hen a juror engages in a conversation with a State's witness during trial, it is the State's burden to prove that the juror was not improperly influenced by such exchange." *State v. Welsh,* 775 S.W.2d 557, 559 (Mo.App.1989) (citing *State v. Martin,* 624 S.W.2d 879, 882 (Mo.App.1981)). However, juror misconduct must first be established by the defendant. *Brown,* 939 S.W.2d at 883. As previously related, neither at trial nor during post-trial proceedings was there any probative evidence showing the substance of any discussion that Juror Brill may have had with anyone. Outside of the possibilities that Juror Brill may have been in the presence of Chief McGaw and Juror McIntosh, there has been no showing that Juror Brill engaged in any prejudicial misconduct. There was no showing that the conduct described influenced Juror Brill's vote on the jury, one way or the other. *See id.*

This case is analogous to *State v. Revelle,* 809 S.W.2d 444 (Mo.App.1991). In *Revelle,*

the defendant alleged juror misconduct in that a juror was seen conversing with a Highway Patrolman during a recess. *Id.* at 447. However, as here, the defendant failed to present any evidence regarding whether the juror discussed the case with the patrolman. *Id.* The court of appeals in *Revelle* quoted from our supreme court's decision in *State v. Eaton,* 504 S.W.2d 12 (Mo.1973):

> There has been no showing that anything relating to the case on trial was discussed during the conversation or that any prejudice to appellant's rights resulted ... 'While the conduct of a prosecuting witness in even innocently visiting with the jurors is to be avoided, nevertheless the court had broad discretion in determining whether a mistrial should be declared.'

*Revelle,* 809 S.W.2d at 447 (citation omitted).

The court also stated that "there [was] likewise no evidence as to the topic of the conversation nor is there any indication of prejudice." *Id.* Similarly, here, Defendant failed to present any evidence identifying the topic of conversation or any other evidence tending to prove juror misconduct or prejudice. Accordingly, as in *Revelle,* the trial court in the instant matter did not abuse its discretion in denying Defendant's motion for a mistrial or his motion for a new trial. See *id.* at 447–48. Point denied.[3]

Although not expressly set out by Defendant in his point relied on, we determine from Defendant's averments that Defendant maintains that the trial court erred when it, *sua sponte,* failed to replace Juror McIntosh with the alternate juror at the time the case was submitted to the jury for its deliberation. Defendant contends that when Juror McIntosh revealed to the trial court that he had asked Police Chief McGaw whether "his mother was still alive" that such question was a manifestation of familiarity with one of the state's witnesses, warranting his replacement.

"The substitution of an alternate juror for a regular juror during trial is matter entrusted to the discretion of the trial court." *State v. Sanders,* 945 S.W.2d 449, 453 (Mo. App.1997). In determining the existence of bias or prejudice with regard to a juror the trial court hears the evidence and evaluates credibility. *State v. Chambers,* 891 S.W.2d 93, 101 (Mo. banc 1994). "Since the trial court is in a better position to determine impartiality of jurors, doubts as to the trial court's findings will be resolved in its favor." *State v. Brown,* 916 S.W.2d 420, 422 (Mo. App.1996). Juror McIntosh's conversations, "while improper, was casual, brief and totally unrelated to anything associated with the trial." *State v. Lasley,* 731 S.W.2d 357, 360 (Mo.App.1987).

Based upon our thorough examination of the record in this matter, we are unable to conclude that the trial court abused its discretion in failing *sua sponte* to replace Juror McIntosh with the alternate juror when the case was submitted to the jury for its deliberation. See *Sanders,* 945 S.W.2d at 453; *Martin,* 624 S.W.2d at 882.

Lastly, although the trial court discussed replacing Juror McIntosh, the record is clear that the trial court considered this option only as a possibility, not a certainty. The trial court stated "[b]ut based on what I've got here, I don't think there is any basis for a mistrial. If anything, at the very most, would be to dismiss Mr. McIntosh and ... then let the alternate sit." The trial court did not abuse its discretion in failing to exercise its option to replace Juror McIntosh. See, e.g., *Sanders,* 945 S.W.2d at 453.

The judgment is affirmed.

PARRISH, P.J., and SHRUM, J., concur.

---

3. In the Argument portion of his brief, Defendant relates a an alleged incident of juror misconduct during the lunch break, prior to the incident in question. At that time Defendant moved for a mistrial but the trial court made no ruling on the motion. The trial court, however, asked the jurors if any of them had had conversations with law enforcement officials. No juror responded. The trial court then admonished them not to speak to anyone during any of their recesses. However, except, perhaps for insinuation, Defendant made no probative showing linking this incident with either Juror Brill or Juror McIntosh.