**STATE of Missouri, Plaintiff–Respondent,**

v.

**Rodney HOLLOWAY, Defendant–Appellant.**

**No. 22277.**

Missouri Court of Appeals,
Southern District,
Division Two.

May 3, 1999.

Jim S. Green, Sikeston, for Appellant.

Kimberly S. Essary–Price, Asst. Pros. Atty., Benton, for Respondent.

ROBERT S. BARNEY, Judge.

Rodney Holloway ("Defendant") appeals the judgment and sentence of the Circuit Court of Mississippi County after a jury verdict found him guilty beyond a reasonable doubt of committing the class B misdemeanor of obstruction of government operations, in violation of section 576.030.[1] The trial court sentenced Defendant to 30 days in jail but suspended execution of the sentence and placed Defendant on one year, non-supervised probation with conditions and fined Defendant $500.00. Defen-

dant raises four points of trial court error, discussed below. We affirm.

Defendant is a "trailer court" owner, i.e., owner of a mobile home park, operating as K & R Estates, on Mar Elm Street in Scott City, Missouri. In the mobile home park, he rents lots where mobile homes are placed. Prior to November 12, 1996, he had been renting space to Billy Ward for the parking of his 1992 14 × 70 Clayton Mobile Home ("mobile home"). At all times pertinent herein, Mr. Ward owed money to Defendant for back rent for the parking of his mobile home on a lot.

On or about November 8, 1996, a "Writ of Replevin" and "Writ or Order in Claim for Possession and Delivery of Personal Property" were issued by the Circuit Court of Scott County, ordering the sheriff to take possession of the mobile home.[2] See generally, Rule 99 and Chapter 533.[3] On November 12, 1996, the Writ of Replevin and Writ Order were served on Mr. Ward at the Scott City Police Department. The sheriff's deputy announced to Mr. Ward that he was taking the mobile home into his possession. Because of the size of the mobile home, however, employees of Ferrell Mobile Homes, Inc., the plaintiff in the underlying replevin action, were to come and transfer the home from the mobile home park. About one week later, Defendant became aware of the replevin action. By this time, Mr. Ward had moved out of the mobile home and it remained on a lot located in Defendant's mobile home park.

On December 2, 1996, employees of Ferrell Mobile Homes, Inc., sheriff's deputy Jerry Bledsoe and a Scott City policeman

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.
   Section 576.030 reads as follows:
   1. A person commits the crime of obstructing government operations if he purposely obstructs, impairs, hinders or perverts the performance of a governmental function by the use or threat of violence, force, or other physical interference or obstacle.
   2. Obstructing government operations is a class B misdemeanor.

§ 576.030.

2. The evidence shows that the "Writ of Replevin" commanded the Sheriff to "take" the mobile home and "deliver the same to the [replevin] plaintiff." The "Writ Order" commanded Mr. Ward to "deliver to the Sheriff" the mobile home in question.

3. All Rule references are to Missouri Court Rules (1996), unless otherwise indicated.

went to Defendant's mobile home park for the purpose of removing the mobile home.

Deputy Bledsoe testified he saw a small red tractor with a scoop on the front and a box blade on the back, parked directly in front of the tongue of the mobile home; its blades were down and the keys were out of the tractor. Additionally, there was a dump truck parked "right up next to [the mobile home]." The truck doors were locked and the windows were rolled up. Deputy Bledsoe acknowledged that the tractor and truck were obstructing the removal of the mobile home. Deputy Bledsoe testified that after several discussions with Defendant, during which time Defendant was requested to allow the orderly removal of the mobile home, Deputy Bledsoe testified that Defendant "advised that he was not going to move the vehicles, that we were not taking the mobile home." He explained that Defendant said he was owed money by Mr. Holloway. Upon being threatened with arrest, Defendant held his hands out and said "You might as well go ahead and take me because I'm not going to let you take the mobile home."[4] Defendant's arrest followed and he was charged with violating the provisions of section 576.030.

■ In his first point, Defendant contends that the court erred in failing to direct a verdict in his favor at the close of the evidence. He contends he did not obstruct the sheriff's officers from *serving the order of replevin* in the underlying replevin action.

■ "A directed verdict of acquittal is authorized only where there is insufficient evidence to support a guilty verdict." *State v. Morovitz*, 867 S.W.2d 506, 508 (Mo. banc 1993). "The function of the court is limited to determining whether there was sufficient evidence from which reasonable persons could have found defendant guilty as charged." *Id.* "In

evaluating this issue, trial and appellate courts must view the evidence and all of its reasonable inferences in the light most favorable to the State...." *Id.*; *see also State v. Small*, 873 S.W.2d 895, 896 (Mo. App.1994).

In analyzing Defendant's first point, it is useful to review the meaning of the phrase "obstructing government operation" as that term is used in section 576.030. Neither of the parties has cited any case law that precisely addresses this issue, and our independent research has failed to disclose any Missouri case that interprets either the phrase "obstructing government operation" or the provisions of section 576.030.

Section 576.030 is found within Chapter 576, wherein are found other statutory proscriptions relating to general "offenses against government," such as: (a) section 576.010, bribery of a public servant; (b) section 576.020, public servant acceding to corruption; (c) section 576.040, official misconduct; (d) section 576.050, misuse of official information; (e) section 576.060, failure to give a tax list; and (f) section 576.070, treason.

Additionally, we find section 576.030 is similar to MODEL PENAL CODE § 242.1 (1980), "Obstructing Administration of Law or Other Governmental Function." In comment two to section 242.1, of the Model Penal Code, under the heading "Purpose & Definition of the Offense", the commentators recite that the "offense punishes anyone who 'obstructs, impairs or perverts the administration of law or other governmental function' by specified means." *Id.* at cmt. 2. Further, "the word 'obstructs' has an expansive meaning." *Id.* "The crime is not limited to interference with the administration of justice but also applies to any other governmental function." *Id.* "The generality of the crime has been confined by limiting its application to (i) violent or physical interference, (ii) breach of official duty, and (iii) any other

---

4. In his direct testimony, Defendant explained that "I always take my tractor and my truck and I put it in front of [a mobile home] to keep [it] from being removed until I have received my rent payments."

act that is unlawful independently of a purpose to obstruct the government." *Id.* In discussing what is "violent or physical interference", the commentators point out that "the section reaches any affirmative act of physical interference not explicitly excepted, whether or not violence is involved." *Id.* at cmt. 3. Significantly, the comments recite that "the existence of some technical illegality or irregularity in the operation of government does not relieve the actor from liability for purposive obstruction." *Id.* at cmt. 7.[5]

As best we can glean from Defendant's arguments he maintains that he should not have been charged and convicted for obstructing a sheriff's deputy from executing an "Order of Replevin" because it had previously been successfully served on Mr. Ward by a sheriff's deputy. Citing *State v. Julius*, 664 S.W.2d 31 (Mo.App.1984), in support of his position, Defendant explains that "[o]nce the Sheriff [had] served the Order of Replevin (and [Mr. Ward did] not refuse to allow [Ferrell Mobile Homes, Inc.] to have the asset) the Sheriff's duties were 'fait accompli' and [Defendant's] (a third party) refusal to do the request of the *deputy* did *not* constitute obstruction with the service of the Order." We disagree. Defendant misconstrues the *Julius* opinion and the rules and procedure involving an action in replevin.

In *Julius,* the Eastern District of this Court interpreted the provisions of section 575.160, involving interference with legal process. The facts in *Julius* showed that when juvenile officers went to defendant's home seeking defendant's grandson, defendant refused them entry. *Id.* at 31. Upon their return armed with a court order authorizing their entry, defendant grabbed the paper and tore it into pieces. *Id.* In reversing the *Julius* defendant's conviction, the court determined that once defendant took the document from one of the officer's hands, "service of the court order was a *fait accompli.*" *Id.* at 32. The court reasoned that "[t]o serve simply means to deliver," and "[s]ervice of process, writ or court order is nothing more than the fulfillment of the due process requirement of notice." *Id.* The court concluded that "[n]o matter how heinous her conduct after she took possession of the court order, it could not constitute obstructing or interfering with the service of the order as charged in the information." *Id.*

We first observe, as previously pointed out, that *Julius* interpreted the provisions of section 575.160, interference with legal process, as opposed to section 576.030, obstructing government operations, pertinent to our review. Secondly, Rule 99.04 ("Order of Delivery" in a replevin action) mandates that the sheriff do more than the merely serve a court order. Rule 99.04 provides that once an Order of Delivery is issued by the court, the sheriff is directed "to take possession of the property." The sheriff is then directed to "deliver it [i.e., the personal property,] to the party [replevin-plaintiff] upon compliance with Rule 99.06 [requiring the filing of a bond]." *Id.* Thirdly, it is clear that Defendant made little if any attempt to legally assert his rights over the mobile home. *See* §§ 700.525 to 700.541.[6]

5. In this connection, *see also* parallel discussion regarding section 575.150(3), resisting arrest, found in *State v. Merritt*, 805 S.W.2d 337, 339 (Mo.App.1991)("[a] person does not enjoy the right to resist any arrest, even an unlawful one, by a known police officer.... [I]t is no defense to the charge of resisting arrest that the officer was without probable cause to make the arrest, was acting in furtherance of a law found to be unconstitutional or that there existed no valid basis with which to arrest the purported violator" (citations omitted)); *State v. Winkelmann*, 776 S.W.2d

44, 45 (Mo.App.1989); *State v. Briggs,* 435 S.W.2d 361, 364–65 (Mo.1968).

6. Section 700.527.1 provides that:

If a person abandons a manufactured home on any real property owned by another who is renting such real property to the owner of the manufactured home, and such abandonment is without the consent of the owner of the real property, the owner of the real property may seek possession of and title to the manufactured home in accor-

■ Lastly, our perusal of the comments to the MODEL PENAL CODE convinces us that attempts by sheriff's deputies to carry out the orders of the Circuit Court of Scott County in the underlying replevin case constituted "government operations" as that term is set out in section 576.030. We determine that there was sufficient evidence showing that Defendant either purposely obstructed, impaired, or hindered the performance of a governmental operation being conducted by law enforcement officials, when Defendant physically placed his tractor and dump truck in such a position next to the mobile home, so as to interfere with its removal from the mobile home park. § 576.030.1.

The trial court did not err in refusing to sustain Defendant's motion to acquit made at the conclusion of all the evidence. Point One is denied.

■ In his second point, Defendant asserts that the trial "court erred in giving Instruction No. 5 because it incorrectly described the governmental function and the obstruction on December 2, 1996[,] to the Sheriff's Department in serving the Order of Replevin in the civil case of Ferrell Mobile Homes v. Billy Ward." This point is not a model of clarity. Defendant appears to rehash the same arguments he made in Point One, but in the context of an incorrect verdict directing instruction (Instruction No. 5).[7] He also argues that the instruction should have recited that Defendant obstructed the Sheriff in carrying out his duties by use of "violence, force, or other physical interference or physical obstruction."

Instruction No. 5 appears to be correctly patterned after MAI–CR 3d 330.14 (1992) and tracks the evidence presented at trial. The pertinent provisions of Instruction No. 5 used in the instant case appear to be set out as follows:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about December 2, 1996, in the County of Scott, State of Missouri, the defendant obstructed the performance of a governmental function, and

Second, that defendant did so by physical obstruction in that he placed vehicles around a mobile home and refused to move the vehicles from around the mobile home for which law enforcement officers were executing a Writ of Replevin . . ., and,

Third, that defendant did so for the purpose of obstructing the performance of such governmental function,

then you will find the defendant guilty of obstructing government operations.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

■ The law provides that "[w]hen an MAI–CR instruction is applicable . . . the instruction is to be given to the exclusion of any other instruction." *State v. McCann*, 952 S.W.2d 392, 394 (Mo.App. 1997); *State v. Moriarty*, 914 S.W.2d 416, 421 (Mo.App.1996). The instruction prop-

---

dance with the provisions of sections 700.525 to 700.541.

Further, we note that Defendant was also a defendant-appellant in *Ferrell Mobile Homes, Inc., v. Holloway*, 954 S.W.2d 712 (Mo.App. 1997), handed down November 4, 1997. This case was a replevin action wherein Rodney Holloway, the same party-defendant as in the instant appeal, and his wife, asserted that they were entitled to possession, *inter alia*, of a certain mobile home for payment of rent, as against the interests of a secured party. *Id.* at 714. The trial court ruled adversely against them and this Court, in affirming the trial

court, concluded that "any right of possession under Section 700.533, RSMo 1994, is dependent upon compliance with Section 700.527, RSMo.1994." *Id.* at 715. We found that "[d]efendants made no attempt to comply with the latter section." *Id.*

7. The instruction is question was not contained in the legal file nor annexed to the brief; however, both parties set out portions of the instruction in question in the argument section of their respective points.

erly hypothesizes that Defendant (1) purposely, (2) "obstructed the performance of a governmental function," and (3) "placed vehicles around a mobile home and refused to move the vehicles from around the mobile home," clearly implying that Defendant physically interfered with or obstructed the movement of the mobile home by law enforcement officers. *See State v. Price*, 684 S.W.2d 566, 568 (Mo.App. 1984)(for instructions to be submitted they "must be supported by substantial evidence and the reasonable inferences to be drawn therefrom"). Point denied.

In his third point, Defendant maintains that the trial court erred in "allowing the Sheriff to testify as to what the Sheriff's legal duty was in serving a writ of replevin." This point has no merit. It has not been preserved for appellate review. The record shows that at trial, in response to over 15 questions asked of him, the sheriff specifically testified about the instant case and his duties in serving the "writ of replevin." Our review shows that only at the conclusion of almost four pages of transcript testimony did Defendant's counsel make an objection to Sheriff's testimony. There was no request to strike the Sheriff's testimony. "Failure to object at the earliest opportunity to the admission of evidence constitutes a waiver of the contention." *State v. Wright*, 934 S.W.2d 575, 584 n. 7 (Mo.App.1996). "Absent an objection in the trial court, such a contention is not preserved for appellate review." *Id.*; *State v. Gregory*, 832 S.W.2d 526, 527 (Mo.App.1992). We review for plain error and find no manifest injustice or miscarriage of justice resulted from the Sheriff's testifying about his duties in serving the Writ of Replevin. Rule 30.20. Point denied.

In his last point, Defendant maintains that the trial court erred in "allowing the law enforcement officials, some of which were witnesses, to intermingle with the jury and to discuss the case within the hearing of the jury." This point is summarily denied. Defendant cites to no authority in support of his point. Absent proper explanation concerning why no authority is cited, points relied on without citations are deemed waived or abandoned. *State v. Higgins*, 852 S.W.2d 172, 175 (Mo. App.1993).[8] Point denied.

The judgment is affirmed.

SHRUM, P.J., and MONTGOMERY, J., concur.

---

8. Defendant has also failed to develop any specifics regarding his contention in the argument portion of his brief. He presents neither sworn testimony from witnesses in support of his point nor does he present a summary of what the witnesses observed. It is necessary that a defendant put on evidence and establish that there was juror misconduct. *See State v. Hicks*, 959 S.W.2d 119, 122 (Mo.App.1997). If a defendant does not put on evidence as to the topic of conversation and the prejudice to his rights that resulted, the defendant has failed to properly raise the issue for the court's consideration. *Id.* at 123 (citing *State v. Revelle*, 809 S.W.2d 444, 447–48 (Mo.App.1991)).