**STATE of Missouri, Respondent,**

v.

**Gordie Odell HUNN, Appellant.**

No. 58985.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 24, 1991.

Judith LaRose, Lew A. Kollias, Brad B. Baker, Columbia, for appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

STEPHAN, Judge.

Gordie Odell Hunn appeals from the judgment of the trial court sentencing him to eight years' imprisonment pursuant to the jury's verdict. The jury found him guilty of second degree robbery in violation of section 569.030 RSMo 1986. Appellant raises six points alleging trial court error concerning an instruction and the admission of certain evidence, including the in-court identification of appellant by victim, oral and written statements to the police by appellant, references to appellant's purchase and use of drugs, and certain hearsay testimony by a police officer. We discern no error and affirm the judgment and sentence of the trial court.

On September 7, 1989, about nine o'clock in the evening, Dr. Joseph Mueller, a St. Charles chiropractor, was mugged after he had left his office and started to get in his car. A man came around from the rear of the car, shoved Dr. Mueller into the front seat, held an object Dr. Mueller thought was a gun to Dr. Mueller's back, mumbled something unintelligible and then said, "I'll get your billfold or I'll blow your head off." He took the doctor's wallet and then fled on foot. The wallet contained about $270.00, credit cards, and the doctor's driver's license.

The doctor described his assailant to the police as a young black man, early to mid-twenties, medium or rather light complexion, medium height, stocky build, between 180 and 200 pounds and wearing a white tee-shirt. The only light was from overhead in his car and rather dim. Although he could see only a portion of his attacker's face, Dr. Mueller thought that the man looked familiar and that he had seen him in the neighborhood before. On September 8, the day after the robbery, one of the officers investigating the crime showed a composite picture of the suspect based on the description provided by Dr. Mueller to people in the neighborhood where the robbery had occurred. The officer spoke with Paris Brown, a professional bondsman, who lived near Dr. Mueller's office. Mr. Brown recalled that he had seen appellant in the neighborhood between 8:00 and 9:00 p.m., the night of the robbery. Mr. Brown called his sister to tell her the police were looking for someone named Andre who had driven appellant across the river to get cocaine. His sister called her son Andre Savage who agreed to meet with detectives that evening.

Savage told the officers that he had met appellant at someone's house on Olive Street near the robbery location in St. Charles around 10:30 p.m. or later the night of the robbery. Appellant told Savage that he had a "large portion of money" and asked Savage to drive him over to Hanley Road in St. Louis County because he had dropped something there and wanted to look for it. The location was significant because a passer-by had found Dr. Mueller's wallet on Hanley Road the day after the robbery. Savage also told the

police he thought appellant had committed the robbery. He gave the police a white tee-shirt appellant had left in Savage's truck the night of the robbery.

Savage also agreed with the police to arrange for appellant to be in Savage's truck later that evening. As planned, the police pulled over Savage's truck a few hours later around 9:00 p.m. They recovered some rock crystal-like substances on appellant. They took appellant to the police station where, about 11:30 p.m., after less than three hours in custody, he confessed to the crime.

Appellant's first point asserts that the State failed to make a submissible case because it did not establish the element of his criminal agency beyond a reasonable doubt. Dr. Mueller had failed to select appellant as his assailant from a photographic array containing appellant's picture on the day after the robbery. Nine months after the robbery during appellant's trial, Dr. Mueller made a positive in-court identification of appellant based upon appellant's facial features. Appellant characterizes Dr. Mueller's trial testimony as equivocal and insubstantial evidence. Appellant acknowledges that the State proved both appellant's presence in the neighborhood of the crime scene and his opportunity to commit the offense, but concludes such evidence was insufficient circumstantial evidence to convict him.

We note at the outset that the basic premise underlying appellant's argument is that the identification is the only evidence of appellant's criminal agency. Such an assumption is flawed. Appellant's own confession is additional evidence of his criminal agency.

■ Notwithstanding appellant's confession, Dr. Mueller's inability to make a positive identification from a photographic array does not undermine the reliability of his positive in-court identification. Such discrepancy goes, instead, to the credibility of the witness and is a proper subject for cross-examination. *See State v. Clark,* 756 S.W.2d 565, 574 (Mo.App.1988). Reliability of the in-court identification is to be assessed under the totality of the circum-

stances. *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972); *State v. Tettamble,* 746 S.W.2d 433, 437 (Mo.App.1988). Factors to be considered in determining reliability include the opportunity of the witness to view the defendant at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the defendant, the degree of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Clark,* 756 S.W.2d at 574; *State v. Reasonover,* 700 S.W.2d 178, 182 (Mo.App. 1985).

■ Here, Dr. Mueller had an opportunity to view his attacker's face, primarily his profile, illuminated by the car's interior lights for several seconds; the doctor was attentive; his description to police despite some discrepancy in weight, closely matched appellant; his in-court identification was not equivocal, and only nine months had elapsed since the robbery occurred and his in-court identification. The totality of the circumstances fully supports a conclusion that Dr. Mueller's in-court identification of appellant as his assailant was reliable. Appellant's first point is denied.

Appellant's second point challenges the admission of his oral and written statements made to the police after his arrest. He argues that his arrest was illegal because no probable cause supported it, so his statements should have been excluded as the fruits of an illegal arrest.

■ The State correctly observes that appellant's point was not raised in the motion for new trial, and, thus, is not properly preserved. *State v. Wright,* 810 S.W.2d 86, 89 (Mo.App.1991). We review for plain error. Rule 30.20. The defendant bears the burden of proving that an alleged error is of such magnitude that it constitutes plain error. *State v. Vanzandt,* 809 S.W.2d 881, 883 (Mo.App.1991). The assertion of plain error places a much greater burden on a defendant than when he asserts prejudicial error. *Id.* A defendant must not only show that prejudicial error resulted, he

must further show that the error so substantially affects his rights that manifest injustice or a miscarriage of justice will inexorably result if left uncorrected. *Id.; State v. Miller,* 604 S.W.2d 702, 706 (Mo. App.1980). Against this legal backdrop we review appellant's second point.

■ Probable cause to arrest exists when the facts and circumstances exist within the knowledge of the arresting officers, and of which they have reasonably trustworthy information, are sufficient to warrant a belief by a person of reasonable caution that the person to be arrested has committed the crime for which he is being arrested. *State v. Sidebottom,* 753 S.W.2d 915, 923 (Mo. banc) *cert. denied* 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988).

■ Probable cause was supplied by the information police had obtained from the informant Andre Savage. A police officer testified Savage had been a reliable informant in the past. Savage told one detective that he believed appellant was responsible for the robbery because the night of the robbery appellant had told Savage that he had made two hundred dollars in a short period of time, appellant wanted Savage to drive him to Hanley Road to pick something up and appellant had left a white shirt in Savage's truck. The police knew from Dr. Mueller's description of his assailant that the robbery suspect had worn a white shirt during the robbery and also that Dr. Mueller's wallet had been recovered on Hanley Road.

Paris Brown, another witness, had also told the officers that he had seen appellant in the neighborhood near Dr. Mueller's office the night of the robbery. In addition, one of the arresting officers had personal knowledge that appellant had a drug problem and lived in the neighborhood where the robbery occurred.

We hold that the foregoing evidence reflects that the facts and circumstances within the knowledge of the arresting officers were reasonably trustworthy and, thus, sufficient to warrant their belief that appellant was a likely suspect in the robbery. Appellant's second point is denied.

Appellant's third point, like his second point, disputes the admissibility of his oral and written statements, but on a different ground. He argues the statements were inadmissible because the police had physically and psychologically coerced him to make the statements. We disagree.

■ The test for voluntariness of a confession is whether, under the totality of the circumstances, the defendant is deprived of a free choice to admit, deny or refuse to answer, and whether physical or psychological coercion was of such a degree that defendant's will was overborne at the time he confessed. *State v. Sumowski,* 794 S.W.2d 643, 646 (Mo. banc 1990); *State v. Smith,* 812 S.W.2d 225, 227 (Mo.App.1991).

■ The police arrested appellant the evening of September 8, 1989, the day after the robbery and did not begin questioning appellant until after he had signed the *Miranda* form around 9:30 p.m. He confessed about 11:30 p.m., after having been in custody for some two hours. Appellant admitted at trial that two of the arresting officers had advised him of his *Miranda* rights, that he had initialed each right listed on a form to indicate his understanding, and that he had signed a written waiver of these rights. These two officers then left and a detective took over appellant's interrogation.

Appellant testified that he gave the detective questioning him a written statement only after the detective had coerced him by choking and hitting defendant on his head. However, the detective who had interrogated appellant denied at the suppression hearing and at trial that he had coerced, threatened, made any promises of leniency, struck or touched appellant. Although he admitted putting "some mental pressure" on defendant, he clarified by explaining that he had used "psychological" means, such as telling defendant that using a weapon could get him numerous years in the state penitentiary, and that defendant could be placed in a physical line-up for identification by Dr. Mueller, the victim.

■ Based on the foregoing evidence, we believe the trial court was within its

discretion to disbelieve appellant's testimony of any physical coercion. The trial court's discretion in this regard is not lightly disturbed. *State v. Anderson*, 800 S.W.2d 465, 467 (Mo.App.1990). Nor do we believe the detective's psychological tactic of telling a suspect of the possible consequences of evidence against him amounts to coercion, despite appellant's argument. The evidence reviewed in its totality fails to demonstrate that coercion caused appellant to confess. Appellant's third point is denied.

Appellant's fourth point asserts the trial court erred in overruling his motion in limine and objections at trial concerning evidence of drugs found on defendant when he was arrested and evidence that appellant went to Hanley Road the night of the robbery to buy drugs. Appellant states that such evidence, coupled with the prosecutor's references during his opening statement to appellant's drug use, constitutes evidence of another crime. He argues the prosecutor elicited the evidence solely to malign appellant's character before the jury.

The general rule is that evidence of other crimes is inadmissible. *State v. Mallett*, 732 S.W.2d 527, 534 (Mo. banc) *cert. denied* 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987); *State v. Hudgins*, 810 S.W.2d 664, 666 (Mo.App.1991). The recognized exceptions to the general rule excluding proof of the commission of separate and distinct crimes by defendant permit evidence of other crimes which tends to establish the identity of the defendant, motive, intent, absence of mistake, accident, or common scheme or plan embracing the commission of more than one offense. *Hudgins*, 810 S.W.2d at 666. The determination of whether the relevance of the evidence outweighs any prejudice to the defendant lies within the sound discretion of the trial court. *Id.* Evidence, which is otherwise relevant, is not rendered inadmissible because it might constitute proof of another crime. *Id.*

In this case, appellant protests the many references to his drug use, including certain remarks by the State during its opening statement and closing argument, certain testimony by one of the arresting officers and testimony by a detective about defendant's oral admissions and written confession. We detail each episode of the allegedly improper references to defendant's drug use. During opening statement the prosecutor commented as follows:

When asked why he had done the robbery, this defendant said he needed some rock cocaine. He needed some money to go buy his cocaine and Dr. Mueller seemed like a good place to get his money, and we'll offer to you corroboration, or verification, of this aspect of his confession, because you know what was found on Gordie Hunn when the police arrested him? A substance which the police will say resembled rock cocaine.

Hunn said that he had committed the robbery in order to get the rock cocaine; that after getting it, he had shared it with his brothers.

No objection was made. During trial, one of the arresting officers testified that, during appellant's arrest, "two small, rock-like substances" were found on him. Appellant had previously interposed an objection that the State's response to his discovery request did not include any lab report indicating the substance discovered on appellant during his arrest to be rock cocaine. Appellant himself acceded to the description of the substance found on him during his arrest as "a rock crystal substance" while vigorously opposing references or conclusions that it was "rock cocaine". Detective Ehrhard testified in part as follows:

Q. [PROSECUTOR] Did he [defendant] tell you why he did the robbery?

     *    *    *    *    *    *

A. To obtain money to purchase narcotics.

Q. Okay. Did you ask him whether he did, in fact, dump the wallet on Hanley Road?

     *    *    *    *    *    *

A. He related that he did throw it out of the window of the car.

     *    *    *    *    *    *

Q. Did you ask him where he went after he did the robbery?

\* \* \* \* \* \*

A. He went over to the north county area to purchase—
[DEFENSE ATTORNEY]:—Objection, your Honor. He just asked him where he went.
THE COURT: Sustained.
Q. [PROSECUTOR]: Where did he go?
A. To purchase some narcotics.

Appellant again objected and requested the jury be instructed to disregard the statement. The trial court so ordered.

In lieu of passing appellant's written confession to the jury, the confession was projected on a screen for the jury to see and the police officer who obtained the statement read it aloud. The confession stated as follows:

I was high off some coke and I needed some more, so I was thinking about where I could get some—some more money and the doctor was coming out of the building. I ran up to him and said: Give me your money. By the time he had sit down in the car, helping me get the wallet out of his pocket. I have a drug problem and if I wasn't—if I wasn't on coke, I wouldn't never do—I would have never do it. I need help bad. I spent all the money on coke, but if I had another chance, I wouldn't—wouldn't do it—have done it.

Finally, in closing argument, without objection, the prosecutor discussed appellant's confession saying, "Look at it. It's filled with self-serving excuses. I mean, it's almost nauseating. It was just because of my drug addiction. I need help bad."

We believe that none of these references to appellant's drug use constitutes reversible error. We are aware that "[e]vidence of other crimes 'is highly prejudicial' and 'should be received only when there is strict necessity.'" *State v. Williams*, 804 S.W.2d 408, 410 (Mo.App.1991) (quoting *State v. Collins*, 669 S.W.2d 933, 936 (Mo. banc 1984)). Nevertheless, trial courts have substantial discretion in determining the extent to which such evidence may prejudice the defendant. *State v. Engle-*

*man*, 653 S.W.2d 198, 199 (Mo.1983). A cursory review of the transcript discloses that several of the objections by defense counsel to references to appellant's drug habit were either untimely because they were made after the answer was already given or they were not made at all.

■ Regardless of that, we are satisfied that testimony of appellant's drug use satisfied one of the exceptions to the rule excluding evidence of other crimes. Here, appellant had a *motive* for the robbery—to get money for his drug problem; it was his *intent* to steal for that purpose when he robbed Dr. Mueller and it was no *mistake*. *Accord, State v. Lewis*, 734 S.W.2d 515, 517 (Mo.App.1987). Point denied.

■ Appellant's fifth point claims error in the giving, over his objection, of instruction number eight patterned on M.A.I.–CR.3d 310.50 to the effect that an intoxicated or drugged condition does not relieve a person of responsibility for his conduct. Appellant argues that the State presented no evidence that appellant was impaired by drugs or alcohol to warrant giving such instruction. He concludes he was prejudiced by the instruction because it emphasized again to the jury his alleged drug use, a crime with which he was not charged.

Appellant is correct in his assertion that note 4 of the Notes on Use of M.A.I.–CR.3d 310.50 provides in part that even though there is evidence of consumption of alcohol or drugs, if there is no evidence from which impairment could be inferred, this instruction may not be given over defendant's objection. Our Court has recently held that submission of this instruction was supported by substantial evidence where the defendant had stated during his confession to police that he shot the victim because he was "high"; defendant's two brothers and mother testified about his drug use, and defendant himself admitted his drug use and its effect on him. *State v. Williams*, 812 S.W.2d 518, 519–20 (Mo.App.1991). Like the defendant in *Williams*, appellant in his confession stated that he was high on cocaine when he committed the robbery.

He admitted having a drug problem and that if he were not on cocaine, he would never have committed the crime. Dr. Mueller recounted that when appellant first attacked him, appellant "mumbled something as he come [sic] around the car, I couldn't understand what it was." Dr. Mueller also described appellant's speech as "slurred." Based on the foregoing evidence, from which impairment might be inferred, the trial court did not abuse its discretion in submitting this instruction to the jury.

Appellant's final point attacks the admission of certain evidence by another detective during the State's case-in-chief. Detective West testified that Andre Savage had told him that appellant had a lot of money on the night of the robbery and that appellant had asked Savage to take him to Hanley Road to get something. Appellant complains that the detective's testimony constituted hearsay and also violated appellant's constitutional right to confrontation of witnesses. Appellant alleges he suffered prejudice because Savage's statements were given the imprimatur of truth when related not by Savage, a paid informant, but by a police officer.

■ There are several impediments to appellant's argument. Initially, the motion for new trial fails to raise this error, so the claim is not preserved for appellate review. Rule 29.11(d). Second, the detective's testimony merely explained his conduct by showing why his investigative efforts had focused on appellant as the likely culprit. It is well-established that testimony offered to explain an officer's conduct, rather than to prove the truth of the facts testified to, is not inadmissible hearsay. *State v. White*, 809 S.W.2d 731, 734 (Mo. App.1991). Finally, Savage himself, when called as a witness by appellant, acknowledged making these statements to Detective West. The record clearly defeats any claimed violation of appellant's right of confrontation. No error, plain or otherwise, resulted from the admission of the detective's testimony. Point denied.

The judgment of the trial court is affirmed.

PUDLOWSKI, P.J., and CRIST, J., concur.