STATE of Missouri, Respondent,

v.

Michael McGUIRE, Appellant.

Michael McGUIRE, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 61945, 66090.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 14, 1995.

Robert E. Steele, Jr., Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl A. Caponegro, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

A jury convicted Michael McGuire of attempted rape, a violation of § 566.030 RSMo 1986. Defendant appeals the conviction and denial of his Rule 29.15 motion without an evidentiary hearing. We affirm.

The evidence, which supports the verdict, is as follows. On December 22, 1990, defendant and his wife picked up their five-year-old niece, J.K., from her mother's home to spend two nights at their home. In the evening J.K. fell asleep in defendant's bed, positioned between defendant and his wife. While his wife was sleeping, defendant committed acts that constitute the offense charged.

The McGuires returned J.K. to her home in the morning of December 24, 1990. On January 2, 1991, J.K. told her mother that something was wrong. Her mother took J.K. to the emergency room where a doctor examined J.K. Two days later, the hospital called and told the mother to bring J.K. back to the emergency room. Hospital personnel told the mother that J.K. had been sexually molested and tested positive for gonorrhea.

While still at the hospital, J.K. and her mother spoke with Jeff Viehmeyer, a social service worker. Viehmeyer told J.K. that she would not be allowed to go home and would have to stay in the hospital if she did not tell him who had assaulted her. J.K. told Viehmeyer that her Uncle Mike had done it. She thus identified defendant.

Between January 21 and 28, 1991, Tish LaRock Mullen, a nurse with the Sexual Abuse Management Team and clinic at Cardinal Glennon, interviewed J.K. three times. J.K. explained what had happened. She said her Uncle Mike was the one involved.

Viehmeyer contacted Officer Gary Guinn of the sex crimes/child abuse section of the St. Louis City Police Department. Once Officer Guinn learned that J.K. had tested positive for gonorrhea, he told Viehmeyer to make arrangements for every adult who had been around the child to be tested for gonorrhea. Officer Guinn later learned that Viehmeyer had only arranged for males to be tested and that only defendant tested positive for the disease. On January 28, 1991, Officer Guinn interviewed J.K. at her home. J.K.'s statements about the incident on December 22, 1990, were consistent with the statements she gave to Mullen.

Dr. James Monteleone, Professor of Pediatrics and Director of Child Protection and Director of the Sexual Abuse Management Clinic at Cardinal Glennon, testified for the state. He had reviewed J.K.'s medical records, which reported she had been examined and had tested positive for gonorrhea. He testified that a gonorrhea infection "must be transmitted by direct mucosa to mucosa contact" and that the disease is only sexually transmitted. He explained that the gonorrhea bacteria is very sensitive and dies quickly. He also testified that if the bacteria was contracted in December, 1990, it would not be unusual to see symptoms in January, 1991. He stated that a gonorrhea infection seen in a child of five or six years of age indicates sexual abuse. He opined that J.K., who was five when the incident occurred and seven at the time of trial, was sexually abused.

On cross examination, Dr. Monteleone acknowledged certain medical authorities have left open the possibility of non-sexual transmission of the disease; however, he expressed his belief that non-sexual transmission of the disease was not possible in children.

After a guilty verdict and sentence, defendant timely filed a Rule 29.15 motion and a first-amended motion. The motion court denied defendant's 29.15 motion without an evidentiary hearing. Defendant presents five points on appeal.

Defendant's first point on direct appeal is a *Batson* claim involving equal protection as it

relates to the government's exercise of peremptory challenges. Defendant contends the state purposely excluded two black venirepersons from the jury solely because of their race. Defendant argues the explanations given by the state were clearly pretextual in that the proffered explanations had no bearing or logical relevance to defendant's trial, and similarly situated white venirepersons were not struck.

■ Once a party has established a prima facie case under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the opposing party must give race-neutral reasons for the challenged peremptory strikes. *State v. Parker*, 836 S.W.2d 930, 934 (Mo. banc 1992), *cert. denied*, ── U.S. ──, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992). To be sufficient the explanation need only be race-neutral, reasonably specific and clear, and related to the particular case to be tried. *Id.* If the state offers sufficient race-neutral explanations for the strikes, defendant must then show that the state's proffered reasons were merely pretextual and that the strikes were racially motivated. *Id.*, 836 S.W.2d at 939.

■ Trial courts are vested with considerable discretion in determining whether the defendant established purposeful discrimination. *Parker*, 836 S.W.2d at 934. Much of their determination turns upon evaluation of intangibles such as credibility and demeanor. *Id.* A trial court's determination regarding purposeful discrimination is a finding of fact that will not be overturned on appeal unless clearly erroneous. *Id.* at 939.

■ Defendant argues the state struck venirepersons Gilliard and Davie solely because of their race. Regarding venireperson Gilliard, the prosecutor explained she struck Gilliard, who works for the federal government in a military record department, because of his familiarity with records and record keeping. The prosecutor planned on calling two custodians of records and anticipated some difficulties with the records from Cardinal Glennon being introduced. Defendant argues this explanation was pretextual because venireperson Boyd, a similarly situated white venireperson, was not struck.

However, venireperson Boyd was not similarly situated. Boyd was a micro accountant, not a microfilm specialist as defendant asserted during the *Batson* hearing. Thus, the state's explanation for striking venireperson Gilliard was not pretextual.

■ Regarding venireperson Davie, the prosecutor explained she struck him because he was a HUD inspector responsible for enforcing provisions of Section VIII regarding low-income housing. The apparent relevance of Davie's occupation was that J.K.'s living arrangements were haphazard in that as many as seven people lived with her in row-type housing at one time, and her mother allowed her to spend time at defendant's home, where adults and children slept together in various beds, couches and on the floor. There is support for the prosecutor's belief that the nature of Davie's job may unduly influence and predetermine his perceptions of J.K. and her family. Thus, the state's explanation for striking Davie was not pretextual.

■ Defendant further argues that a second explanation the prosecutor offered for striking venireperson Davie was pretextual. Because the prosecutor's first explanation was sufficient, we need not review a second explanation. Point denied.

Defendant's second point on direct appeal is the trial court erred in prohibiting direct examination of defendant and his wife regarding the common usage of a towel or rag in lieu of toilet paper in the victim's household. Defendant argues this testimony was crucial to his defense that J.K. possibly contracted gonorrhea by non-sexual transmission from a female member of her household.

■ A trial court has wide latitude in determining whether to admit or exclude evidence adduced by the parties at trial. *State v. Clark*, 711 S.W.2d 928, 932 (Mo.App.1986). Absent clear abuse, we will not interfere with the trial court's ruling on the admission or exclusion of evidence. *Id.*

Defendant contends his defense was partially based on proving the possibility of non-sexual transmission of gonorrhea. He did not offer expert testimony addressing the possibility of non-sexual transmission of the

disease. However, on cross examination, Dr. Monteleone, the state's expert, conceded that some in the medical field opined that gonorrhea could survive in towels for up to twenty-four hours. He did not agree with that view. In addition, on direct examination, defendant attempted to testify that the members of J.K.'s household shared a towel or rag in lieu of toilet paper and that J.K. possibly contracted gonorrhea from another member of the household. The trial court sustained the state's objection to this testimony. Defendant attempted to pursue a similar chain of questioning on direct examination of his wife. Again the court did not allow the testimony.

 The trial court did not abuse its discretion in prohibiting testimony concerning the alleged hygiene of members of J.K.'s household. In the absence of supporting medical testimony, the questions posed by defense counsel would not have elicited information that would have provided defendant with a defense. The defendant and his wife could only testify about their own personal hygiene habits, whether at their home or at J.K.'s home. They did not have first-hand knowledge of the hygiene habits of J.K. or members of her household. In fact, on cross examination, J.K. testified she never used a rag or towel in lieu of toilet paper at her home. Further, defendant did not present evidence that any member of J.K.'s household had gonorrhea. All the male members tested negative. The female members were not tested. Without evidence that anyone in the household was infected with the disease and that it could be indirectly transmitted, it would not be possible for J.K. to have contracted it in any manner from one of them. The trial court did not abuse its discretion in excluding this evidence. Point denied.

Defendant's third point on direct appeal is the trial court erred in allowing testimony of Tish Mullen and Gary Guinn concerning statements allegedly made by J.K. because the statements were hearsay and unreliable. Defendant argues J.K. changed her account of crucial points, such as where and how the alleged molestation transpired.

 Defendant concedes he did not properly preserve this point for appeal; therefore we may review for plain error. Rule 30.20.

Defendant must prove that an alleged error is of such magnitude that it constitutes plain error. *State v. Hunn,* 821 S.W.2d 866, 869 (Mo.App.1991). The assertion of plain error places a much greater burden on defendant than when he asserts prejudicial error. *Id.* A defendant must not only show that prejudicial error resulted, but he must further show that the error so substantially affects his rights that manifest injustice or a miscarriage of justice will inexorably result if left uncorrected. *Id.* at 869–70.

This point implicates § 491.075 RSMo 1986. It allows the admission, as substantive evidence, of an out-of-court statement made by a child who is an alleged victim of an offense under Chapter 565, 566 or 568 RSMo 1986. If the court finds in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability, the statement can be admitted as substantive evidence. Section 491.075; *State v. Whittle,* 813 S.W.2d 336, 339 (Mo.App.1991).

 The trial court held a pre-trial hearing on the reliability of the statements about which Mullen and Guinn would testify. The trial court found the out-of-court statements, considering the time, content, and circumstances of the statements, provided sufficient indicia of reliability to be admissible as substantive evidence. There is substantial evidence to support the trial court's findings.

First, J.K.'s statements to Mullen were made within a month of the incident. Also, Mullen interviewed J.K. alone. Her mother was not present in the room. J.K. chose and positioned anatomically correct dolls to demonstrate what had happened to her. She used terminology that was age-appropriate. In addition, J.K.'s statements to Officer Guinn were made within a month of the incident. No one was in the room when she made statements to Officer Guinn, and he did not promise her anything in exchange for implicating defendant. Again, she used age-appropriate terminology. Finally, J.K. told Officer Guinn the same basic story she had told Mullen. In light of this evidence, the trial court did not err in admitting J.K.'s out-of-court statements pursuant to § 491.075

RSMo 1986. We find no error, plain or otherwise. Point denied.

Defendant's final two points on appeal address the denial of his 29.15 motion. Defendant argues his trial counsel was ineffective for 1) failure to obtain an expert witness to testify regarding the transmission of gonorrhea through non-sexual contacts, and 2) failure to investigate the gonorrhea test results of Brian Burns, Andrew Henry, and Robert Ayers, male members of the victim's household. We reject these claims of error.

■ Appellate review of denial of a 29.15 motion is limited to a determination of whether the findings, conclusions and judgment of the motion court were clearly erroneous. Rule 29.15(j).

■ Before a movant is entitled to an evidentiary hearing, his motion must satisfy the following requirements 1) it must allege facts, not conclusions, that would warrant relief if true, 2) the record must not refute those facts, and 3) the matters complained of must have prejudiced the movant. *State v. Flenoid*, 838 S.W.2d 462, 470 (Mo.App.E.D. 1992).

■ To establish ineffective assistance of counsel, defendant must prove his counsel's performance was deficient and the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Sanders v. State*, 738 S.W.2d 856 (Mo. banc 1987).

■ The motion court did not err in denying defendant's 29.15 motion without an evidentiary hearing on his claim that his counsel was ineffective for failure to secure the testimony of an expert witness. When a defendant alleges that his trial counsel is ineffective for failing to call a witness at trial, defendant must identify 1) an existing witness, 2) what his testimony would have been, 3) whether counsel was informed of his existence, and 4) whether he was available to testify. *State v. Dudley*, 819 S.W.2d 51, 56 (Mo.App.1991). The motion court found that defendant's allegation of failure to secure the testimony of an expert witness

consists of mere speculation because movant has not suggested or named an expert who would have testified on his behalf, and has not listed such an expert as a witness to be called if a hearing is granted.

Defendant did not allege that an expert was available to testify regarding his theory of non-sexually transmitted gonorrhea on the facts of his case. He did not allege that counsel knew of such an expert but failed to call him or her to testify. As such, he did not allege facts that would warrant an evidentiary hearing. Thus, the motion court's finding is supported by the record. Point denied.

■ Finally, the motion court did not err in denying defendant's Rule 29.15 motion without an evidentiary hearing on his claim that his trial counsel was ineffective for failure to investigate the gonorrhea test results of the male members of J.K.'s household. The motion court correctly found that defendant's allegation in his *pro se* motion, which was incorporated by reference into his first-amended motion, was conclusory and amounted to speculation.

Defendant did not allege that any of the male members of J.K.'s household tested positive for gonorrhea. If none of the male members tested positive, his theory that one of them could have infected J.K. would be unsupportable. As such, he did not allege facts that would warrant an evidentiary hearing. Thus, the record supports the motion court's finding. Point denied.

Affirmed.

AHRENS, P.J., and SIMON, J., concur.