STATE of Missouri, Respondent,

v.

Michael D. SANDERS, Appellant.

Nos. WD 51105, WD 52436.

Missouri Court of Appeals,
Western District.

March 4, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 29, 1997.

Application to Transfer Denied
June 17, 1997.

---

Susan L. Hogan, Assistant Appellate Defender, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jill C. LaHue, Asst. Atty. Gen., Jefferson City, for Respondent.

Before LOWENSTEIN, P.J., and SPINDEN and HOWARD, JJ.

HOWARD, Judge.

Michael Sanders was convicted of one count of murder in the second degree, § 565.021, RSMo 1994, one count of robbery in the first degree, § 569.020, RSMo 1994, and two counts of armed criminal action, § 571.015, RSMo 1994. He now appeals,

claiming that the trial court erred by failing *sua sponte* to replace a juror who revealed during a recess at trial that, prior to trial, someone had talked to him about the crimes. Mr. Sanders also appeals from the denial of his Rule 29.15 motion for post-conviction relief, claiming that his trial counsel was ineffective for failing to investigate, interview, and present the testimony of two potential alibi witnesses.

The judgments of the trial court and the motion court are affirmed.

At Mr. Sanders' trial, the State's main witness was Diana Thompson, who presented the following testimony. On the night of May 24, 1993, Ms. Thompson went with Mr. Sanders and a third man, Michael Rolf, to the home of the victim, Joseph Okorie, in Kansas City, Missouri. Mr. Sanders and Mr. Rolf got out of the car and loitered near the Okorie residence, waiting for Mr. Okorie to return home. Ms. Thompson saw a car pull into the Okorie driveway, and the car's arrival prompted Mr. Sanders and Mr. Rolf to approach the house. Ms. Thompson then heard a single gunshot, after which Mr. Sanders and Mr. Rolf returned to their car. Before the trio drove back to Ms. Thompson's residence, Mr. Sanders told her, "Di, I fucked up, I shot him, I shot him."

At the conclusion of Ms. Thompson's testimony, the trial court announced a recess, and during the break a juror informed the court and the attorneys that he knew Mr. Rolf's sister, and that, prior to trial, she had told him about the robbery and murder. According to the juror, the woman had told him that Ms. Thompson was involved with some other people who had robbed and killed Mr. Okorie, but she did not tell him who those other people were. During the earlier voir dire proceedings, the juror had not responded when the venire panel was asked if anyone had knowledge of the case. The juror explained that he had come forward now because seeing Ms. Thompson at trial had jogged his memory.

The juror indicated that his prior interaction with Mr. Rolf's sister would not interfere with his ability to be fair in this case. He also confirmed that he could put his conversation with Mr. Rolf's sister out of his mind and base his decision solely on the evidence and instructions which he heard at trial. The juror further stated that he had not talked, and would not talk, to any of the other jurors about what he'd heard outside the courtroom. Neither the prosecutor nor Mr. Sanders' trial counsel sought to have the juror replaced, and he remained on the panel.

In the course of the trial, the State also presented evidence that money was taken from Mr. Okorie during the incident. Mr. Sanders, who presented no evidence at trial, was convicted and sentenced as a prior and persistent offender to concurrent prison terms of thirty years on the count of second-degree murder, twenty years on the count of second-degree robbery, and twenty and ten years on the two counts of armed criminal action.

Mr. Sanders then filed a Rule 29.15 motion for post-conviction relief, which included a claim that his trial counsel was ineffective for failing to investigate, interview, and present the testimony of two potential alibi witnesses, Leisha Beachem and Keith Kelly. The motion alleged that Ms. Beachem and Mr. Kelly could have established that Mr. Sanders was at a nightclub on the night of May 24, 1993, and therefore was not involved in the robbery and murder of Mr. Okorie.

Both Ms. Beachem and Mr. Kelly testified at the evidentiary hearing on Mr. Sanders' Rule 29.15 motion. Ms. Beachem and Mr. Kelly both testified that Mr. Sanders was at a nightclub with them between 11:30 p.m. and midnight on May 24, 1993, which was when Mr. Okorie was robbed and killed. Ms. Beachem and Mr. Kelly both stated that they would have been willing to so testify at Mr. Sanders' trial, but Mr. Sanders' trial counsel never contacted them.

Mr. Sanders also testified at his Rule 29.15 hearing, and stated that he had told his trial counsel about Ms. Beachem and Mr. Kelly, and that he had given his trial counsel their addresses and phone numbers. Later in the hearing, the State called Mr. Sanders' trial counsel as a witness and questioned him on this issue:

Q. Do you recall [Mr. Sanders] ever giving you the name of Leisha Beachem, Keith Kelly, and/or Joe Wright as people he wanted you to call as witnesses in this case?

A. I don't recall. I mean, I don't recall that he did.

Q. Do you recall him telling you that these people would testify for him as alibi witnesses?

A. No, not that I know of.

Q. Are you familiar with him ever asking you to contact any of these people?

A. No.

Q. Do you remember him asking you to contact those people or anybody else as alibi witnesses in this case?

A. No.

On cross-examination, Mr. Sanders' trial counsel was again asked if Mr. Sanders had mentioned alibi witnesses to him, and he responded as follows:

A. What I've said is he may have said something but I don't recall it.

Q. We're relying today on your recollection that he did that?

A. Yes.

Q. But you can't recall whether he did or not?

A. That's correct.

Later in the hearing, Mr. Sanders' trial counsel was questioned by the motion court, and the following exchange occurred:

Q. Well, if [Mr. Sanders] had told you that his girlfriend of 20 years, a [sic] Mr. Kelly, could testify and would testify that he was someplace other than the scene of the crime at the time it occurred, would you have made a note of that?

A. Sure. I would have tried to get ahold of them.

Q. That's all I have.

Mr. Sanders' Rule 29.15 motion was denied by the motion court, which explained in its findings and conclusions that

[a]fter an evidentiary hearing, the Court finds that there is no credible evidence that movant's trial counsel was ever given the names of these people to contact or that movant's counsel is familiar with these

names as being persons who the movant suggested that he contact. Failure to call a witness is not ineffective assistance of counsel if counsel had no notice of the witness ... Likewise, it is not ineffective assistance for counsel to fail to investigate witnesses whom he does not know exist.

In his sole point on appeal from the denial of his Rule 29.15 motion, Mr. Sanders claims that his trial counsel was ineffective for failing to investigate, interview, and present the testimony of potential alibi witnesses Leisha Beachem and Keith Kelly. Mr. Sanders contends that the motion court erred by concluding that the evidence did not support a finding that his attorney had not been made aware of these potential witnesses, given the fact that Mr. Sanders testified that he had given the names, phone numbers, and addresses of the witnesses to the attorney, and the attorney himself had testified that he could not remember whether Mr. Sanders did so or not.

This court will reverse the motion court only if the motion court's findings and conclusions are clearly erroneous. *State v. Harris,* 870 S.W.2d 798, 814 (Mo. banc 1994). The motion court's findings and conclusions are clearly erroneous only if, after a review of the entire record, this court is left with the definite and firm impression that a mistake has been made. *Id.,* at 814–15.

It is true, as Mr. Sanders points out, that his trial counsel testified that he could not remember whether or not Mr. Sanders informed him of the potential alibi witnesses. However, through its own questioning of the attorney, the motion court received the attorney's assurance that, if Mr. Sanders had told him of the potential witnesses, he would have followed up on that information. The motion court could have reasonably inferred from the attorney's response that, if the attorney did not pursue these witnesses, it was because he was not told of them.

In any event, the motion court did not clearly err in finding a lack of credible evidence that Mr. Sanders' attorney was ever given the names of the potential alibi witnesses, despite the fact that Mr. Sanders

testified that he supplied the attorney with that information. The motion court is not required to believe the testimony of a Rule 29.15 movant, even if uncontradicted, and this court must defer to the motion court's determination of credibility. *State v. Clements,* 849 S.W.2d 640, 646–47 (Mo.App.1993). Point denied.

In his sole point on direct appeal, Mr. Sanders claims that the trial court erred by failing *sua sponte* to remove the juror who revealed that, prior to trial, Mr. Rolf's sister had told him about the robbery and murder of Mr. Okorie. Mr. Sanders acknowledges that there was no objection to the juror's continued presence on the panel, and that the issue was not raised in his motion for a new trial. He therefore seeks review on the basis of plain error.

■ An assertion of plain error places a much greater burden on a defendant than when he asserts prejudicial error. *State v. McGuire,* 892 S.W.2d 381, 385 (Mo.App. 1995). A defendant must not only show prejudicial error occurred, but he must also show that the error so substantially affected his rights that a manifest injustice or a miscarriage of justice would inexorably result if the error was left uncorrected. *Id.*

■ The substitution of an alternate juror for a regular juror during trial is a matter entrusted to the discretion of the trial court. *State v. Naucke,* 829 S.W.2d 445, 461 (Mo. banc 1992). Here, the juror stated that he could be fair and impartial, and that he could base his judgment solely on the evidence heard in the courtroom, and both the prosecutor and Mr. Sanders' own counsel found his assurances to be credible. Under the circumstances, there was no cause for the trial court to suspect that a reasonable juror could not be impartial with the prior knowledge that the juror had of this case, and the trial court did not abuse its discretion by not replacing the juror. Point denied.

The judgments of the trial court and the motion court are affirmed.

All concur.